MILLER, Retired Justice.
[¶ 1.] Kenneth Duebendorfer executed a will that made Randy and Kathy Moller (Mollers) the chief beneficiaries. Upon Duebendorfer’s death, several individuals filed a petition contesting probate of the will. A jury found the will to be the product of undue influence and it was denied probate. Mollers appeal. We affirm.
Facts and Procedural History
[¶ 2.] Duebendorfer died on April 27, 2003, at the age of ninety. He was a bachelor who lived modestly, but had substantial wealth. He had one sister, Irene Rohrabaugh, who died on February 23, 2001. Kathy Moller is the great niece by marriage of Rohrabaugh. She and her husband Randy are the appellants in this case. The contestants are Marcella Hinds (she and her deceased husband, Don, were close friends of Duebendorfer), the Hinds’ two daughters, Victoria Sikkink and Linda Zenk, Maxine Bienash and Elizabeth Barks, both cousins of Duebendorfer, and Russell Jeffords, Duebendorfer’s friend.
[¶ 3.] In 1998 Duebendorfer executed a power of attorney naming Hinds as his attorney-in-fact. She was taking care of Duebendorfer on a daily basis, providing hygiene, meals and transportation. She also assisted Duebendorfer in his financial affairs by paying his bills. It is undisputed that Hinds never asked for money, nor was she ever paid by Duebendorfer for assisting him.
[¶ 4.] From the time Hinds was named Duebendorfer’s attorney-in-fact until Roh-rabaugh’s death, Mollers had mere “sporadic” contact with Duebendorfer, seeing him only about once a month. After Roh-rabaugh’s death, Duebendorfer was requested by Attorney Mike McGill, (who was representing Kathy on behalf of Roh-rabaugh’s estate), to disclaim his interest in joint bank accounts and property Due-bendorfer held with Rohrabaugh. This request was apparently for South Dakota inheritance tax concerns. Duebendorfer *441 disclaimed his interest in the property, but refused to disclaim his interest in the money. If he had done so, Kathy would have financially benefited as she was a beneficiary of Rohrabaugh’s estate.
[¶ 5.] In March 2001, Hinds took Due-bendorfer to the State Bank of Alcester to meet with bank official Lois Anderson to change several bank accounts and certificates of deposits (CD’s) he had held jointly with Rohrabaugh.[1] Duebendorfer opened five different CD’s with payable on death (POD) beneficiaries for a total of approximately $170,000. He also opened two other accounts for a total of approximately $178,000. Those two accounts were in Duebendorfer’s name only with no POD beneficiaries.
[¶ 6.] Also in March, Duebendorfer met with Attorney Gary Ward to discuss making a will. Hinds was present at this meeting, but did not participate in the discussion. Duebendorfer executed that will on March 21, 2001. It provided cash bequests to Evelyn Brugger, Dennis West, Elizabeth Barks, Maxine Bienash, Judy Timm, Joyce Phyle, Marcella Hinds, Linda Floren, and Victoria Sikkink. The will further provided that the residue of the estate would be divided in seven equal shares to Ella Nason, Joyce Phyle, Russell Jeffords, Hinds, Linda Floren, Victoria Sikkink, and Kathy and Randy (they were to share 1/7 equally).
[¶ 7.] After Rohrabaugh’s death, Mol-lers began to have more frequent contact with Duebendorfer. Beginning in March 2002, Randy was attempting to see him once a week. Mollera also began to help care for Duebendorfer, assisting with his hygiene, meals, and household needs. At the same time, Hinds noted that her relationship with Duebendorfer began to suddenly change; his actions towards her were angry and belligerent. Duebendor-fer apparently was upset with Hinds over a gun her grandson had borrowed from him, as well as the care and frequency of visits he was receiving from her. Additionally, there was concern because it was being suggested to Duebendorfer by Randy and Duebendorfer’s friend, Ray Lewis, that Hinds was mishandling or mismanaging his money.[2] These suggestions upset Duebendorfer.
[¶ 8.] Towards the end of March 2002, Duebendorfer reviewed his will with Ray Lewis. Lewis told Duebendorfer that he thought Hinds was trying to “take him” and this upset Duebendorfer. Duebendor-fer further reviewed his will with Mollera. Kathy testified that she was “amazed” at what the will contained and she “questioned” the will’s provisions, noting that her brother was not mentioned. Randy contacted Attorney McGill to arrange an appointment so that Duebendorfer could execute a new power of attorney and will.
[¶ 9.] On March 30, 2002, Duebendor-fer signed a new power of attorney naming Mollera as his true and lawful attorneys-in-fact. He also discussed terms of a new will with McGill. McGill testified that he noted at the meeting that Duebendorfer was very angry with Hinds, but was not angry at nor had any ill feelings towards any of the other beneficiaries of his current will. After this meeting McGill communicated with Duebendorfer through Randy, receiving from Randy changes Duebendorfer allegedly wanted to make. Both Randy and Kathy admitted that they were aware of the impact of the changes *442 Duebendorfer was making in his will, ie., that they were to be the chief beneficiaries under the new will.
[¶ 10.] McGill testified that at the time of drafting the new will he was concerned with the possibility Mollers were exercising undue influence over Duebendorfer. In McGill’s opinion, three of the four elements of undue influence were present. He testified that Mollers had both access and opportunity to exercise undue influence over Duebendorfer. Finally, McGill testified that had he known Randy was telling Duebendorfer that Hinds was stealing from him or mishandling his money, the information would be evidence of undue influence and a badge of fraud and, importantly, he would not have prepared the new will or permitted it to be executed.
[¶ 11.] Duebendorfer executed the new will on April 10, 2002. It again made monetary bequests to Russell Jeffords, Evelyn Brugger, Hinds, and Roy Zinser, as well as a bequest to Ray Lewis. However, unlike the old will, under the new will these bequests would fail if the individual predeceased Duebendorfer. The will then made Mollers the chief beneficiaries of Duebendorfer’s estate by leaving the remainder, both real and personal property, to them rather than dividing it evenly as he had before. The new will made this provision even though several people, including Mollers, testified that Duebendor-fer did not want his estate to go to one individual; rather, he wanted it divided evenly among several people. Also troublesome was that the bequest to Mollers would not fail if they predeceased Dueben-dorfer; rather, it would go to their heirs. The new will further contained a contesta-bility clause that the old will had not.
[¶ 12.] After the execution of the April 2002 will, Mollers used the power of attorney for their personal benefit. Randy used it to attempt to terminate a lease Duebendorfer had with Roger Stevens on Duebendorfer’s farm, which had existed for over thirty years (because Randy was interested in farming the land himself). When Stevens spoke to Duebendorfer about the lease, Duebendorfer apparently had no idea that Randy had termination papers prepared. After talking with Due-bendorfer, they agreed the lease would remain in effect. Stevens agreed to increase the rent on 9.5 acres of land and keep the rent the same for the remainder of the term.
[¶ 13.] Moreover, on January 15, 2003, after obtaining a note allegedly signed by Duebendorfer, Randy changed the POD beneficiary on all of the accounts at the Alcester bank, listing himself and Kathy as the POD beneficiaries.[3] All of these changes resulted in approximately $266,000 in POD benefits to Mollers upon Duebendorfer’s death on April 27, 2003. Randy also made POD beneficiary changes on two accounts Duebendorfer had at the Wells Fargo Bank in Beresford. After the changes made by Randy, these two accounts had Randy and Kathy as POD beneficiaries and resulted in a payment of approximately $129,000 to Mollers. Overall, upon Duebendorfer’s death Mollers were paid a total of approximately $395,000 as a result of all the POD beneficiary changes Randy made using the power of attorney.
[¶ 14.] After Duebendorfer’s death, Hinds and several others filed a petition contesting probate of Duebendorfer’s April 10, 2002 will, claiming it had been procured by undue influence on the part of Mollers. *443 A jury trial was held July 25-28, 2005. The jury found the will was the product of undue influence and it was denied probate.
[¶ 15.] Mollers appeal raising two issues:
1. Whether the trial court erred in allowing “other acts” evidence under SDCL 19-12-5 (Rule 404(b)).
2. Whether the trial court erred in giving Jury Instruction 17.
Standard of Review
[¶ 16.] “Evidentiary rulings made by the trial court are presumed correct and are reviewed under an abuse of discretion standard.” Veeder v. Kennedy, 1999 SD 23, ¶ 41, 589 N.W.2d 610, 619 (citing State v. Oster, 495 N.W.2d 305, 309 (S.D.1993)). See also State v. Mattson, 2005 SD 71, ¶ 13, 698 N.W.2d 538, 544 (citations omitted). “The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion.” Veeder, 1999 SD 23, ¶ 41, 589 N.W.2d at 619 (citing State v. Rufener, 392 N.W.2d 424, 426 (S.D.1986)). “If error is found, it must be prejudicial in nature before this Court will overturn the trial court’s evidentiary ruling.” Mattson, 2005 SD 71, ¶ 13, 698 N.W.2d at 544 (citing Novak v. McEldowney, 2002 SD 162, ¶ 7, 655 N.W.2d 909, 912 (citations omitted)).
[This Court] construe[s] jury instructions as a whole to learn if they provided a full and correct statement of the law. If, as a whole, the instructions misled, conflicted, or confused, then reversible error occurred. The party charging that an instruction was given in error has the dual burden of showing that the instruction was erroneous and prejudicial. An erroneous instruction is prejudicial if in all probability it produced some effect upon the verdict and is harmful to the substantial rights of the party assigning it.
Kappenman v. Stroh, 2005 SD 96, ¶ 14, 704 N.W.2d 36, 40-41 (citing Behrens v. Wedmore, 2005 SD 79, ¶ 37, 698 N.W.2d 555, 570 (citing First Premier Bank v. Kolcraft Enterprises, Inc., 2004 SD 92, ¶ 40, 686 N.W.2d 430, 448)).
Analysis and Decision
[¶ 17.] 1. Whether the trial court erred in allowing “other acts” evidence under SDCL 19-12-5 (Rule 404(b)).
[¶ 18.] Mollers filed a motion in limine seeking to exclude any evidence regarding their activities as Duebendorfer’s attorneys-in-fact relating to the POD beneficiary changes as well as evidence concerning Randy’s attempt to terminate Stevens’ farm lease. After a pretrial hearing and receiving briefs and arguments from both parties, the trial court denied Mollers’ motion. At trial, both parties made reference to and discussed the POD beneficiary changes to the CD’s and the farm lease. However, Mollers never objected to this testimony.
[¶ 19.] Now on appeal, Mollers argue that the trial court erred in allowing the contestants’ to introduce evidence of “other acts” under SDCL 19-12-5 (Rule 404(b)). They specifically argue that the evidence relating to the changing of the POD beneficiaries on the CD’s held by Duebendorfer to Randy and Kathy and the attempted termination of Stevens farm lease by Randy was “irrelevant and unfairly prejudicial to the ultimate detriment of the Mollers.” However, because Mollers failed to object to this evidence at trial, they have failed to preserve this issue for *444 appeal.[4]
[¶ 20.] The law in effect at the time of trial was clear. “The purpose of a motion in limine is to prevent prejudicial evidence, argument, or reference from reaching the ears of the jury. However, a trial court’s ruling on a motion in limine is preliminary and may change depending on what actually happens in trial.” Kappenman, 2005 SD 96, ¶ 4, 704 N.W.2d at 39 (citing Kolcraft Enterprises, 2004 SD 92, ¶ 7, 686 N.W.2d at 437). “Alert practitioners must remain conscious to the danger of failing to make an adequate record at trial when a motion in limine has been earlier granted or denied.” Kolcraft Enterprises, 2004 SD 92, ¶ 16, 686 N.W.2d at 441.
The initial ruling by itself preserves nothing for appeal. To claim error based on the denial of a motion in li-mine, the trial court must allow, over renewed objection, that which the moving party sought to exclude to be presented to the jury. Where an in limine motion is denied but the evidence, argument, or reference is subsequently entered in the record without objection, there is no appealable issue, no reversible error.
Kappenman, 2005 SD 96, ¶ 4, 704 N.W.2d at 39 (citing State v. Red Star, 467 N.W.2d 769, 771 (S.D.1991) (citing State v. Gallipo, 460 N.W.2d 739, 743 (S.D.1990))) (additional citations omitted). See also Kolcraft Enterprises, 2004 SD 92, ¶ 16, 686 N.W.2d at 441 (holding “in the absence of an objection or an offer of proof during trial to the admission or refusal to admit challenged evidence, an appeal from a ruling on a motion in limine is waived”) (citing Joseph v. Kerkvliet, 2002 SD 39, ¶ 7, 642 N.W.2d 533, 535).
[¶ 21.] Mollers failed to object at trial to the introduction of the evidence concerning the changes to the CD’s and the farm lease. Therefore, they failed to preserve this issue for appeal. Thus, it is deemed waived and we decline to address it.
[¶ 22.] 2. Whether the trial court erred in giving Jury Instruction 17.
[¶ 23.] Mollers argue that the trial court erred in giving Jury Instruction 17[5] *445 for two reasons. First, they assert it -was error for the trial court to conclude, as a matter of law, that a confidential relationship existed between Mollers and Dueben-dorfer. Second, they argue Instruction 17 confused the burden of proof with the burden of going forward with the evidence.
[¶ 24.] This Court “construe[s] jury instructions as a whole to learn if they provided a full and correct statement of the law.” Kappenman, 2005 SD 96, ¶ 14, 704 N.W.2d at 40. Further, “the party charging that an instruction was given in error has the dual burden of showing that the instruction was erroneous and prejudicial. An erroneous instruction is prejudicial if in all probability it produced some effect upon the verdict and is harmful to the substantial rights of the party assigning it.” Id. Was Instruction 17 a misstatement of the law and therefore erroneous?
[¶ 25.] Mollers first argue that Instruction 17 removed a question of fact from consideration by the jury. They assert that the trial court erred in instructing the jury that, because of the power of attorney, a confidential relationship did exist at the time of the execution of the April 10, 2002 will.
[¶ 26.] Under our settled law: “[a] fiduciary relationship is founded on a ‘peculiar confidence’ and trust placed by one individual in the integrity and faithfulness of another. When such relationship exists, the fiduciary has a ‘duty to act primarily for the benefit’ of the other. ‘Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.’” Ward v. Lange, 1996 SD 113, ¶ 12, 553 N.W.2d 246, 250 (citing High Plains Genetics Research, Inc. v. JK Milk-Iron Ranch, 535 N.W.2d 839, 842 (S.D.1995)) (citations omitted). “The existence of a fiduciary duty and the scope of that duty are questions of law for the court.” Id. Therefore, in South Dakota, as a matter of law, a fiduciary relationship exists whenever a power of attorney is created.
[¶ 27.] This Court has held that “a confidential relationship is generally synonymous with a fiduciary relationship.” Buxcel v. First Fidelity Bank, 1999 SD 126, ¶ 14, 601 N.W.2d 593, 597 (citing Crane v. Centerre Bank of Columbia, 691 S.W.2d 423, 428 (Mo.Ct.App.1985)) (citation omitted). Furthermore, a “confidential relationship is not restricted to any particular association of persons.” Hyde v. Hyde, 78 S.D. 176, 186, 99 N.W.2d 788, 793 (1959). A “confidential relationship exists whenever a decedent has placed trust and confidence in the integrity and fidelity of another.” In the Matter of Estate of Unke, 1998 SD 94, ¶ 16, 583 N.W.2d 145, 148 (citing In re Estate of Madsen, 535 N.W.2d 888, 892 (S.D.1995)) (citations and internal quotations omitted).
[¶ 28.] It is undisputed that the Mollers were in a fiduciary relationship as of March 30, 2002, as a result of the execution of the power of attorney by Dueben-dorfer. In addition and equally important, both Randy and Kathy individually admitted at trial that from March 30, 2002, until Duebendorfer’s death, each was in a confidential and fiduciary relationship with Duebendorfer. Kathy testified:
*446 Q: You agree also that you were in a confidential and fiduciary relationship with Kenneth once the power of attorney was executed in your favor on March 30, 2002?
A: Correct.
Randy testified:
Q: And you agree that from that time on, March 30, 2002, you were in a confidential and fiduciary relationship with Kenneth?
A: Yes, I was.
Mollers cannot claim a version of the facts more favorable than that to which they testified at trial. See Overfield v. American Underwriters Life Ins. Co., 2000 SD 98, ¶ 19, 614 N.W.2d 814, 819; Western States Land & Cattle Co., Inc. v. Lexington Ins. Co., 459 N.W.2d 429, 434 (S.D.1990). Therefore, because Mollers admit they were in a confidential and fiduciary relationship with Duebendorfer (and they clearly were), it was not error for the trial court to instruct the jury, as a matter of law, such a confidential relationship existed.
[¶ 29.] Because the trial court did not err in instructing the jury that a confidential relationship existed, we next address Mollers’ second claim of error; that the trial court improperly instructed the jury regarding the burden of proof of undue influence. Mollers assert that the trial court erred in instructing that the burden of proof shifted to them. They argue that only the burden of going forward with the evidence shifted to them.
[¶ 30.] The relative burdens of the parties in contested will cases are set forth by statute. SDCL 29A-3-M07 provides:
In contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue, and heirship. Proponents of a will have the burden of establishing pri-ma facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof. If a will is opposed by the petition for probate of a later will revoking the former, it shall be determined first whether the later will is entitled to probate. If a will is opposed by a petition for a declaration of intestacy, it shall be determined first whether the will is entitled to probate,
(emphasis added). This statute clearly indicates that the party with the initial burden of proof has the ultimate burden of persuasion. Thus, the proponents of the will, Mollers, had the ultimate burden of persuasion as to the “due execution” of the will. That burden does not shift, but remains with them. Conversely, the contestants have the ultimate burden of persuasion to establish undue influence.
[¶ 31.] Under this Court’s settled law, “to establish the existence of undue influence a will contestant must prove four elements by a preponderance of the evidence: ‘(1) decedent’s susceptibility to undue influence; (2) opportunity to exert such influence and effect the wrongful purpose; (3) a disposition to do so for an improper purpose; and (4) a result clearly showing the effects of undue influence.’ ” Estate of Dokken, 2000 SD 9, ¶ 27, 604 N.W.2d 487, 495 (quoting Unke, 1998 SD 94, ¶ 12, 583 N.W.2d at 148 (citing In re Estate of Elliott, 537 N.W.2d 660, 662-63 (S.D.1995))).
[¶ 32.] “A presumption of undue influence arises ‘when there is a confidential relationship between the testator and a beneficiary who actively participates *447 in preparation and execution of the will and unduly profits therefrom.’” Id. ¶ 28 (citing Unke, 1998 SD 94, ¶ 13, 583 N.W.2d at 148 (quoting Madsen, 535 N.W.2d at 892)). “When this presumption arises, the burden shifts to the beneficiary to show he took no unfair advantage of the decedent.” Id. (citing Unke, 1998 SD 94, ¶ 13, 583 N.W.2d at 148 (citing In re Estate of Metz, 78 S.D. 212, 222, 100 N.W.2d 393, 398 (1960))). In addition, “[t]he finding of a confidential relationship shifts the burden to [the beneficiary] to show by a preponderance of the evidence that [he/]she took no unfair advantage of [the decedent] in the creation of the will[.]” In re Estate of Smith (Smith II), 520 N.W.2d 80, 83 (S.D.1994) (citing In re Estate of Smith (Smith I), 481 N.W.2d 471, 475 (S.D.1992)).[6] However, “the burden of going forward with the evidence in an undue influence case does not shift to the beneficiary unless a presumption of undue influence is established.” Dokken, 2000 SD 9, ¶ 28, 604 N.W.2d at 495 (citing Unke, 1998 SD 94, ¶ 13, 583 N.W.2d at 148) (emphasis omitted).
[¶ 33.] Instruction 17 instructed the jury that because a confidential relationship existed, Mollers must show they took no unfair advantage of Duebendorfer in the preparation and execution of his will. Id. Instruction 17 further instructed:
if you find that the Mollers actively participated in the preparation and execution of the will and that they unduly profited there from, then a presumption of undue influence arises. When this presumption of undue influence arises, the burden of proof shifts to the Mollers to show that they took no unfair advantage of Kenneth Thomas Duebendorfer in the creation of the will in order to rebut or defeat a finding that undue influence exists.
This instruction allowed the jury to determine, 1) whether the contestants had established that Mollers had actively participated in the preparation and execution of the will, and 2) whether they unduly profited from their actions. It was only after making these two findings that the jury was instructed a presumption of undue influence was established. As per the holdings of Dokken, Unke, and Smith II, the burden then shifted to Mollers to rebut this presumption.
[¶ 34.] The jury was then further instructed that if they found Mollers did not rebut this presumption, they were to check yes on the special verdict form. However, if the jury determined that either 1) Mol-lers did not actively participate in the preparation and execution of the will, or 2) did not unduly profit from it, i.e. they rebutted the presumption, the jury were then instructed that the contestants “have the burden of proving the four elements set forth in Instruction No. 16 in order to establish that the will was the result of the undue influence of the Mollers.” Thus, “the ultimate burden remained] on the person contesting the will to prove the elements of undue influence by a preponderance of the evidence.” Unke, 1998 SD 94, ¶ 13, 583 N.W.2d at 148 (citing Madsen, 535 N.W.2d at 893).
[¶ 35.] Therefore, based on the forgoing, Instruction 17, as a whole, correctly states the law on undue influence and the shifting burden. As Instruction 17 was not a misstatement of law, this Court does not need to address whether the instruction was prejudicial.
[¶ 36.] Affirmed.
[¶ 37.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.
*448 [¶ 38.] ZINTER, Justice, concurs in part and concurs in result.
[¶ 39.] MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.

. None of these accounts benefited Hinds or any member of her family.

. Mollers concede that there is no evidence in the record that Hinds ever had or was stealing, taking, or mishandling any of Duebendor-fer’s money or property.

. See Bienash v. Moller, 2006 SD 78, 721 N.W.2d 431 for further explanation of these transactions.

. The Court, in holding this issue waived on appeal today, recognizes that Supreme Court rule 06-67, Amendment of SDCL 19-9-3 (Rule 103(a)), effective July 1, 2006, provides in part: "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.” However, because this rule was not in effect at the time of the ruling in the present case, Mollers waive their right to appeal this issue by failing to object at trial.

. Instruction 17, in its entirety, reads:
FIRST, in this case you are instructed that a confidential relationship did exist between Kenneth Thomas Duebendorfer and Randy and Kathy Moller because the Mol-lers were the agents for Duebendorfer under the Power of Attorney at the time of the execution of the April 10, 2002 will. If you find that the Mollers actively participated in the preparation and execution of the will and that they unduly profited there from, then a presumption of undue influence arises. When this presumption of undue influence arises, the burden of proof shifts to the Mollers to show that they took no unfair advantage of Kenneth Thomas Due-bendorfer in the creation of the will in order to rebut or defeat a finding that undue influence exists.
If this presumption of undue influence arises, as set forth above, and if you determine that the Mollers did take unfair advantage of Kenneth Duebendorfer, then you shall find that Randy and Kathy Moller exercised undue influence over Kenneth Thomas Duebendorfer and check Yes on the Special Verdict form.
SECOND, if you determine that either 1) the Mollers did not actively participate in the preparation and execution of the April 10, 2002 will, or 2) that the Mollers did not unduly profit there from, then the contes *445 tants have the burden of proving the four elements set forth in Instruction No. 16 in order to establish that the will was the result of the undue influence of the Mollers.
If you find that all four of these elements have been proved, you shall check Yes on the Special Verdict Form. If you find that one or more of these four elements have not been proved, then you shall check No on the Special Verdict Form.

. Smith I and Smith II predate the adoption of SDCL 29A-3-407.