#28676-a-DG
**2019 S.D. 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ESTATE OF STANTON W. FOX, deceased.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA
* * * *

THE HONORABLE ROBERT L. SPEARS
Judge
* * * *

JASON KW KRAUSE
MATTHEW J. ABEL of
The Krause Law Firm, P.C.
Sioux Falls, South Dakota                    Attorneys for appellant
                                             Lynelle Herstedt.


NANCY L. OVIATT
JAMES C. ROBY of
Green, Roby & Oviatt LLP
Watertown, South Dakota                      Attorneys for appellee
                                             Kelly Fox.


THOMAS F. BURNS
Watertown, South Dakota                      Attorney for appellee
                                             Steven Fox.

RORY KING of
Bantz, Gosch & Cremer, LLC
Aberdeen, South Dakota                       Attorneys for appellee
                                             Melanie Morrow.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 7, 2019
OPINION FILED **03/13/19**

#28676

GILBERTSON, Chief Justice

[¶1.]        Stanton Fox passed away in Watertown, South Dakota on September 15, 2017.  He was unmarried and had no children, but was survived by five siblings: Steven Fox, Melanie Morrow, Cordell Fox, Taylor Fox, and Kelly Fox.  Stanton and Appellant Lynelle Herstedt (Lynelle) were in an intimate relationship for over twenty years before Stanton's passing, but the relationship ended prior to his death. Although Stanton drafted a will in 2015, before he died he drafted a handwritten document that stated he wished to revoke all prior wills and codicils.  Lynelle submitted a copy of the former will for probate, while Stanton's siblings claimed the original prior will was revoked by the subsequent document.  The circuit court held a hearing on various petitions and motions and ultimately found that Stanton had died intestate, determined Stanton's heirs, and entered letters for co-personal representatives.  Lynelle appeals several aspects of the circuit court's rulings.  We affirm.

## Facts and Procedural History

[¶2.]        On May 18, 2016, Stanton met with his attorney, John C. Wiles.[1]  The pair discussed Stanton's relationship with Lynelle and the fact that it had come to an end.  Wiles asked Stanton if he had a will and durable power of attorney. Stanton replied that he did, but when Wiles asked him if he wanted Lynelle involved in making medical decisions, Stanton replied "absolutely not."  Wiles then asked Stanton if Lynelle was involved in the will and he answered "yes."  Wiles testified that Stanton told him he did not want Lynelle to participate in his estate

---

1.      At all times during these events, Stanton was an attorney who was a licensed member of the State Bar of South Dakota.

-1-

upon his death. Wiles then testified that he advised Stanton to revoke his will and power of attorney in writing and to "physically get rid of the documents."

[¶3.] That same day, while at Wiles's desk, Stanton handwrote a document to revoke his will and his power of attorney. The document stated: "I hereby revoke all prior wills and codicils ever made or executed by me." Stanton signed the document in front of Wiles and Wiles's secretary and dated it May 18, 2016. After the document was signed, Wiles testified that he told Stanton to destroy his will and power of attorney. Wiles stated that Stanton said he would do so. Wiles retained the original revocation of all prior wills and had the original in his possession at the time of Stanton's death.

[¶4.] On July 21, 2017, Stanton spoke to Page Fox, his brother Kelly's wife, over the phone. In that conversation, Stanton informed Page that he had Lynelle evicted from his home and that Stanton and Lynelle's relationship was over. Page stated that Stanton "thought he wasn't going to be here much longer with his illness." She also stated that Stanton told her that: (1) he destroyed his former will; (2) he did not have a new one; (3) he named Kelly as beneficiary of his life insurance; and (4) he wanted to make sure part of the insurance proceeds went toward Kelly's and Page's daughter's education.

[¶5.] On September 19, 2017, Stanton was found dead in his home. Kelly was the first family member notified of Stanton's death. He and Page traveled to Watertown and went directly to Stanton's home. After police determined that Stanton had died of natural causes, they gave Kelly and Page a key to Stanton's home and suggested they look for anything pertinent to Stanton's death. Kelly and

Page claimed they searched the house, basement, garage, under stairs, and in drawers, closets, file cabinets, and boxes. They also claimed to have looked in a specific area where Stanton had told his brother Steven the will would be located. They did not find a will or power of attorney.

[¶6.] During the search of Stanton's home, family members discovered a key and lease agreement for a safe-deposit box at Wells Fargo Bank. The lease showed Stanton as the primary lessee and Lynelle as secondary lessee. On September 26, 2017, Lynelle advised Steven and Kelly's attorney, James C. Roby, that the safe deposit box may have contained Stanton's will. Lynelle, her attorney, and Roby went to Wells Fargo and opened the safe-deposit box later that day. The box contained a few documents including a copy of Stanton's will, but not the original.

[¶7.] On October 11, 2017, Lynelle filed an application for informal probate with the Codington County Clerk of Court. Lynelle attached the document found in the safe-deposit box to the application, claiming it was a photocopy of Stanton's original January 7, 2016, will. The county clerk issued letters of personal representative the same day. The next day, the circuit court entered an order revoking the letters of personal representative and clerk's statement of informal probate and appointment of personal representative because Lynelle had not presented the original will.

[¶8.] On October 13, October 17, and November 8, 2017, respectively, Kelly, Steven, and Melanie (Appellees) filed and served their formal petitions for adjudication of intestacy, determination of heirs, and appointment of personal representative. On October 16, 2017, Wiles filed an affidavit with a copy of the

purported revocation of wills attached. A hearing on Kelly's and Steven's petitions was set for November 1, 2017.

[¶9.] Lynelle then appealed the circuit court's revocation of letters of personal representative, clerk's statement of informal probate, and appointment of personal representative to this Court. In *In re Estate of Fox (Fox I)*, 2018 S.D. 35, 911 N.W.2d 746, 750, we held that the circuit court's order of revocation did not end "the particular action in which it was entered and [left] nothing further for the court pronouncing it to do in order to completely determine the rights of the parties as to that proceeding." (quoting *In re Estate of Geier*, 2012 S.D. 2, ¶ 13, 809 N.W.2d 355, 358). Because the order was not an appealable order under SDCL 15-26A-3 over which this Court had jurisdiction, we were required to dismiss the case. *Id.*

[¶10.] Following the dismissal of *Fox I*, Appellees asked to schedule a hearing for their respective petitions on May 31, 2018. The circuit court granted the request, and the parties served notice of the hearing on Lynelle. On May 11, 2018, Lynelle filed and served a motion for scheduling order, a petition for special administrator, and a petition to commence a formal testacy proceeding. After the May 31 hearing, the circuit court granted the Appellees' petitions and entered findings of fact and conclusions of law, an order of intestacy, a determination of heirs and appointment of co-personal representatives in intestacy, and separate letters of co-personal representative to each of the Appellees. The Appellees all signed and filed their acceptance of appointment as co-personal representatives. The circuit court denied Lynelle's proposed scheduling order and proposed order for a special administrator.

[¶11.]     Lynelle now appeals the circuit court's decision, asserting several issues for our review, which we reorder and restate as follows:

> 1.     Whether the circuit court erred by granting the petitions seeking adjudication of intestacy because it found Stanton's handwritten document was a valid revocation.
>
> 2.     Whether the circuit court erred in granting the petitions seeking adjudication of intestacy, a determination of heirs, and the appointment of co-personal representatives because it did not follow proper statutory procedure.
>
> 3.     Whether the circuit court abused its discretion or committed plain error when it held a substantive hearing 36 days after the determination of *Fox I*.

### Standard of Review

[¶12.]     "A circuit court's findings of fact will be upheld 'unless they are clearly erroneous.'" *In re Estate of Flaws*, 2016 S.D. 60, ¶ 19, 885 N.W.2d 336, 342-43 (quoting *Kreps v. Kreps*, 2010 S.D. 12, ¶ 25, 778 N.W.2d 835, 843). "[F]indings of fact will be overturned on appeal if 'a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Kreps*, 2010 S.D. 12, ¶ 25, 778 N.W.2d at 843). Statutory interpretation and application and conclusions of law are reviewed de novo. *Id.* ¶¶ 18-19. "We review a [circuit] court's finding that a lost will has been revoked under the clearly erroneous standard." *In re Estate of Long*, 1998 S.D. 15, ¶ 9, 575 N.W.2d 254, 255 (quoting *In re Estate of Modde*, 323 N.W.2d 895, 898 (S.D. 1982)).

### Analysis & Decision

[¶13.]     *1.     Whether the circuit court erred by granting the petitions seeking adjudication of intestacy because it found Stanton's handwritten document was a valid revocation.*

[¶14.] Lynelle argues that the circuit court's decision to grant the Appellees' petitions for adjudication of intestacy before determining whether the will Lynelle proffered was entitled to probate deprived Lynelle of her day in court and her ability to prove that the will may have been valid. She cites SDCL 29A-3-407, which provides:

> [i]n contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue, and heirship. Proponents of a will have the burden of establishing prima facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof. If a will is opposed by the petition for probate of a later will revoking the former, it shall be determined first whether the later will is entitled to probate. *If a will is opposed by a petition for a declaration of intestacy, it shall be determined first whether the will is entitled to probate.*

(Emphasis added.) Lynelle claims that by failing to first determine if Lynelle's copy of Stanton's will was entitled to probate, the circuit court improperly shifted the burden of proof to Lynelle to disprove that the codicil proffered by the Appellees revoked the will she proffered.

[¶15.] Lynelle's interpretation of SDCL 29A-3-407 ignores the fact that she, as the proponent of the copy of Stanton's will found in the safe-deposit box, had "the burden of establishing prima facie proof of due execution" of that document. Despite filing an application for informal probate and a petition to commence formal testacy proceedings, Lynelle never produced any evidence that Stanton had properly executed the copy of his will. She only attached the photocopy of the purported will to her pleadings and claimed that Stanton signed the original will on

February 14, 2015, and by the proper witnesses in January of 2016. She provided

no other evidence showing that the photocopied document was Stanton's valid will.

[¶16.]    In her petition, Lynelle stated that Stanton's original will was

"otherwise unavailable due to the fact that its believed location is currently

inaccessible to Petitioner." SDCL 29A-3-402(d) provides that

> If the original will, or certified copy of the will as probated in another jurisdiction, is not available, the contents of the will can be proved by a copy of the will and the testimony or affidavit of at least one credible witness that the copy is a true copy of the original, *and the will may be admitted to probate if the court is reasonably satisfied that the will was not revoked by the testator.* If a copy of the will is not available, the contents of the will can be proved only by clear and convincing proof, and the court shall enter an order setting forth the contents and the names of the witnesses.

(Emphasis added.) The statute clearly states a heightened burden which a

proponent of a copy of a will must meet to have the will probated. Even assuming

without deciding that Lynelle met the requirements of the statute, the circuit court

still must be "reasonably satisfied that the will was not revoked by the testator."

SDCL 29A-3-402(d).

[¶17.]    Here, the circuit court was apparently not satisfied that the will

Lynelle provided a copy of remained valid. On the contrary, the court found that

Stanton had actually revoked it. In its findings of fact contained in the order of

intestacy, the circuit court concluded that Stanton died intestate and, pursuant to

SDCL 29A-3-203(a)(5), Stanton's five siblings had equal priority of being named as

personal representatives. The court entered findings after it heard evidence that

Stanton's will had indeed been revoked.

[¶18.] The court considered testimony regarding the actions and statements Stanton made before creating the purported revocation. The circuit court also heard testimony which indicated that Stanton's family had conducted an exhaustive search of Stanton's home in an effort to find an original will. The family never located the original will, even after searching the place where Stanton had told a member of the family that he had placed the original will.

[¶19.] We have held that "'when a careful and exhaustive search fails to produce the original will,' a presumption arises that the will has been revoked." *In re Estate of Deutsch*, 2015 S.D. 47, ¶ 8, 865 N.W.2d 874, 876 (quoting *In re Estate of Gustafson*, 2007 S.D. 46, ¶ 9, 731 N.W.2d 922, 925). "Proponents of a lost will have the burden to overcome the presumption that it was revoked." *Id.* "The effect of a presumption of law is 'to invoke a rule of law compelling the [factfinder] to reach the conclusion in the absence of evidence to the contrary from the opponent.'" *Gustafson,* 2007 S.D. 46, ¶ 11, 731 N.W.2d at 926) (quoting *In re Estate of Duebendorfer*, 2006 S.D. 79, ¶ 45, 721 N.W.2d 438, 450 (Zinter, J., concurring)). "We explain[] the burden of proof needed to overcome the presumption as follows:"

> A presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

*Id.* (quoting *Estate of Duebendorfer*, 2006 S.D. 79, ¶ 45, 721 N.W.2d at 450 (Zinter, J., concurring)).

[¶20.] Lynelle failed to overcome the presumption that the will had been revoked for the same reason she failed to prove that a copy of Stanton's will was

valid. Again, Lynelle never produced any additional evidence that the photocopy of Stanton's will had been properly executed.

[¶21.] In addition, the circuit court found that Stanton's handwritten document was a holographic will that revoked his earlier wills.

> We have consistently followed a two-step analysis regarding the assessment of purported holographic wills. First, we determine whether the writing complies with the statutory requirements for a holographic will. SDCL 29A-2-502. Second, we analyze whether the writing was executed with testamentary intent and demonstrated testamentary character. *Estate of Martin*, 2001 S.D. 123, 635 N.W.2d 473; *Estate of Pierce*, 531 N.W.2d 573 (S.D. 1995). Each case must be considered separately on its own facts and the decedent's intention "must be determined in the light of the words used in the writing, and any extraneous circumstances bearing upon the question of intention." *Estate of Zech*, 70 S.D. 622, 626, 20 N.W.2d 229, 231 (1945).

*In re Estate of Serbousek*, 2008 S.D. 46, ¶ 3, 751 N.W.2d 718, 719. SDCL 29A-2-502(a) provides that "[a] will is valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting."

SDCL 29A-2-507(a)(1) provides that "[a] will or any part thereof is revoked: (1) [b]y executing a subsequent will that revokes the previous will or part expressly or by inconsistency[.]"

[¶22.] Here, the evidence established that the material portions of the brief handwritten document in question were in Stanton's own handwriting and signed by Stanton in front of his attorney. According to the testimony of his attorney and friends, Stanton's relationship with Lynelle had deteriorated, so he intended to keep Lynelle from receiving any of his property when he wrote the document. The handwritten document meets our two-part test, and is therefore a holographic will.

As to revocation, the will expressly revoked any prior wills and codicils.

Considering the words in the document and in light of extraneous circumstances,

Stanton's handwritten document was a valid will which revoked all of his prior

wills.

[¶23.]    Given the evidence before the circuit court at the time the court

entered the adjudication of intestacy, the court's finding that Lynelle had not

proffered a valid will because Stanton had revoked it prior to his death was not

clearly erroneous.

[¶24.]    *2.    Whether the circuit court erred in granting the petitions seeking
adjudication of intestacy, a determination of heirs, and the
appointment of co-personal representatives because it did not
follow proper statutory procedures.*

[¶25.]    Lynelle next makes a series of claims arguing that the circuit court

erred by failing to follow proper statutory procedure in granting the three petitions

seeking adjudication of intestacy.  She first argues that she did not receive timely

notice of hearing, but only with regard to Melanie's petition for formal probate as

required by SDCL 29A-3-403(b).  She therefore argues that the circuit court erred in

granting the petition for adjudication of intestacy for lack of notice.

[¶26.]    SDCL 29A-3-403(b) requires that notice of hearing be given to "heirs,

devisees, and personal representatives named in any will that is being, or has been,

probated, or offered for informal or formal probate in the county . . . ."  If notice of a

hearing is served by mail, then SDCL 29A-1-401(a)(1) requires that a copy of the

notice of hearing and the petition must be mailed "at least fourteen days before the

time set for the hearing by certified, registered, or ordinary first class mail

addressed to the person being notified at the post office address given in the

person's demand for notice, if any, or at the person's place of residence, if known . . . ." Under SDCL 15-6-6(e), "whenever [] service is required to be made a prescribed period before a specified event, and the notice or paper is served by mail, three days shall be added to the prescribed period." SDCL 29A-1-401(3) provides that

> [i]f the address or identity of any person is not known and cannot be ascertained with reasonable diligence, [notice shall be given] by publishing at least once a week for three consecutive weeks, a copy of the notice of hearing in a legal newspaper in the county where the hearing is to be held, the last publication of which is to be at least fourteen days before the time set for the hearing[.]

Finally, SDCL 15-6-6(a) provides that "[i]n computing any period of time prescribed or allowed by this chapter . . . the day of the act, event, or default from which the designated period of time begins to run shall not be included."

[¶27.] Here, Lynelle correctly points out that service by mail should have been made 17 days prior to the hearing on the petitions for adjudication of intestacy. However, Lynelle claims she was served notice of Melanie's petition on May 15, 2018, only 16 days prior to the hearing. Despite any potential defects in service, however, Lynelle has failed to show prejudice. The factual allegations of Kelly and Steven's petitions, which were timely served, were similar if not identical to Melanie's petition. All three petitions sought the same relief. Ultimately, Melanie appeared at the hearing through counsel. There was no prejudice, and the circuit court did not err in granting all three petitions for adjudication of intestacy.

[¶28.] Lynelle next argues the circuit court erred in granting the three Appellees' appointments as co-personal representatives before the Appellees had

accepted the appointments. "Prior to receiving letters, a personal representative shall qualify by filing with the appointing court an acceptance of office and any required bond." SDCL 29A-3-601. Here, all three personal representatives filed an acceptance of appointment. Steven's was filed when he filed his petition. Kelly and Melanie filed theirs *after* the clerk issued their letters of appointment. However, even if this procedural matter was made in error, it is not reversible error. Lynelle has provided no evidence that Kelly or Melanie acted on matters of the estate before signing the acceptance. Therefore, there was no prejudice to Lynelle.

[¶29.]      Finally, Lynelle argues that the circuit court erred when it ordered that Taylor and Cordell were Stanton's heirs even though there was no evidence or testimony presented at the hearing proving them to be so. Lynelle claims that the action of the court violated SDCL 29A-3-407, which provides that "*petitioners* who seek to establish intestacy have the burden of establishing prima facie proof of death, venue, and *heirship*." (Emphasis added.) Lynelle seems to claim that Taylor and Cordell did not prove their own heirship. However, Taylor and Cordell were not petitioners in this matter. It was Kelly, Steven, and Melanie, who, as petitioners, had the burden of establishing prima facie proof of heirship under SDCL 29A-3-407. As to heirship, all three petitioners (and even Lynelle), agreed in their petitions, under oath, that Stanton's heirs were his five siblings. The petitioners met their prima facie burden. Lynelle's claim in regard to heirship is without merit.

[¶30.]      3.      *Whether the circuit court abused its discretion or committed plain error when it held a substantive hearing 36 days after the determination of* Fox I.

[¶31.]      "The grant or denial of a motion for continuance of a trial is within the sound discretion of the [circuit] court." *Fanning v. Iversen*, 535 N.W.2d 770, 776

(S.D. 1995). Lynelle argues that "the [c]ircuit [c]ourt either abused its discretion or committed plain error when it refused to allow Lynelle additional time to conduct discovery prior to proceeding with the prosecution of her petition seeking a declaration of [t]estacy." "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *Stern Oil Co., Inc. v. Brown*, 2018 S.D. 15, ¶ 46, 908 N.W.2d 144, 157 (quoting *Erickson v. Earley*, 2016 S.D. 37, ¶ 8, 878 N.W.2d 631, 634). Lynelle claims that "a majority of the time in this case has been pending, [and] the previous appeal ha[s] severely limited [her] ability to conduct meaningful discovery." Thus, she claims the circuit court's decision to proceed with the hearing 36 days after this Court's decision in *Fox I* amounted to an abuse of discretion.

[¶32.] Lynelle never filed a motion for continuance. She did object, however, to holding a hearing on the petitions for adjudication of intestacy, but this objection was an extension of her claim of insufficient notice addressed above. The circuit court was uncertain as to whether Lynelle was seeking a delay to further prepare or to advance the notice argument, but found, in any event, that Lynelle had sufficient time to prepare for the hearing to determine the issue of intestacy.

[¶33.] We cannot say the circuit court abused its discretion or committed plain error when it proceeded with the hearing. Absent from Lynelle's objection or argument is a claim that conducting the hearing on May 31, 2018, prevented her from presenting evidence she would have sought to admit or otherwise prejudiced her.

## Conclusion

[¶34.]     The circuit court did not commit clear error by granting the petitions seeking adjudication of intestacy, determining Stanton's heirs, or appointing co-personal representatives.  Further, the court did not abuse its discretion or commit plain error in proceeding with a hearing on the above matters on November 1, 2017. We affirm.

[¶35.]     KERN, JENSEN, and SALTER, Justices, and SEVERSON, Retired Justice, concur.