1999 SD 3

In the Matter of the GUARDIANSHIP and Conservatorship OF Grace Darlyn BLARE, a person alleged to need protection.

No. 20489.

Supreme Court of South Dakota.

Considered on Briefs Dec. 3, 1998.

Decided Jan. 6, 1999.

---

Matthew J. Kinney, Spearfish, for appellant Jeri Blare-Bartlett.

Lester Nies of Richards, Hood & Nies Spearfish, for appellee Pioneer Bank & Trust.

MILLER, Chief Justice.

[¶ 1.] Jeri Blare–Bartlett appeals the trial court's appointment of a third-party guardian for her mother Grace.   We affirm.

### FACTS

[¶ 2.] Jeri Blare–Bartlett and James Donald Blare (J.D.), two of the parties to this appeal, are the children of Grace and Doc Blare.   The Blares' other children, J. Darlene Muller and Linda Blare, are not parties to this appeal, but have been significantly

involved in guardianship proceedings for both parents.

[¶ 3.] Even though this appeal only involves the appointment of a guardian for Grace, the facts and circumstances surrounding Doc's case are closely connected to those in Grace's guardianship action. In fact, the trial court heard arguments and testimony for both guardianship matters in the same proceeding.

[¶ 4.] On February 27, 1997, Blares' three daughters and a granddaughter petitioned the court for the appointment of a guardian for Doc. On March 4, the court appointed them Doc's temporary guardians and also appointed Pioneer Bank & Trust of Belle Fourche, South Dakota, as temporary conservator. J.D. then petitioned to appear and participate in the guardianship action. On June 18, the court determined Doc needed a guardian and conservator and ordered that the temporary guardians and conservator become permanent. On July 24, J.D. moved for a modification of the guardianship, requesting that he be appointed Doc's guardian and that the permanent guardians be removed.

[¶ 5.] On August 8, J.D. petitioned the court to appoint him as temporary guardian of Grace. The daughters moved for a dismissal of the petition, claiming Grace was not in need of a guardian. They argued the "springing power of attorney"[1] Grace executed on April 19, 1995, naming Doc as attorney-in-fact and Jeri as the alternate attorney-in-fact, eliminated the need for a guardian for her. Alternatively, they argued that if the power of attorney did not eliminate the need for a guardian, Jeri should be appointed her guardian.

[¶ 6.] On October 22, 1997, the circuit court heard testimony and arguments on both petitions. At the hearing, J.D. amended his original petition by requesting that a third-party be appointed Grace's guardian.

[¶ 7.] The court issued its memorandum decision on November 10, 1997. It determined that Grace was in need of a guardian,

and that the springing power of attorney had no force or effect. It appointed the South Dakota Guardianship Program as guardians of both Grace and Doc.

[¶ 8.] On appeal, Jeri raises the following issues:

1. Whether the trial court erred by appointing a third-party guardian for Grace contrary to her nomination of an attorney-in-fact as set forth in her springing power of attorney.

2. Whether the trial court erred in appointing a third-party guardian of Grace based on its finding that appointing Jeri would not be in Grace's best interests.

## STANDARD OF REVIEW

[¶ 9.] We review a circuit court's appointment of a guardian under an abuse of discretion standard. *In re Guardianship of Jacobsen*, 482 N.W.2d 634, 636 (S.D.1992). "Abuse of discretion refers to an end or purpose not justified by and clearly against reason and the evidence." *In re Guardianship of Rich*, 520 N.W.2d 63, 66 (S.D.1994) (citations omitted). "The determination is not 'whether we would have made the same ruling, but whether a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.'" *Pellegrin v. Pellegrin*, 1998 SD 19, ¶ 10, 574 N.W.2d 644, 647 (quoting *DeVries v. DeVries*, 519 N.W.2d 73, 75 (S.D. 1994)). Further, "only a 'clear' abuse of discretion warrants reversal." *Jacobsen*, 482 N.W.2d at 636 (citing *Rykhus v. Rykhus*, 319 N.W.2d 167, 170 (S.D.1982)).

## DECISION

[¶ 10.] **1. The trial court did not abuse its discretion by appointing a third-party guardian for Grace contrary to her nomination of Jeri as the alternate attorney-in-fact in her springing power of attorney.**

[¶ 11.] SDCL 29A–5–302 sets forth the criteria for the appointment of a guardian. It provides, in part:

> incapacitated or disabled. It also provided for an alternate attorney-in-fact, who was to act if the appointed attorney-in-fact was determined to be incompetent or deceased.

---

1. "Springing power of attorney" is the term the scrivener used to describe the instrument Grace executed. It provided for the appointment of an attorney- in-fact to act for Grace if she became

A guardian may be appointed for an individual whose ability to respond to people, events, and environments is impaired to such an extent that the individual lacks the capacity to meet the essential requirements for his health, care, safety, habilitation or therapeutic needs without the assistance or protection of a guardian.

[¶ 12.] Here, the circuit court found that Grace was incompetent, incapacitated and, under SDCL 29A–5–302, eligible for appointment of a guardian. The court then appointed the South Dakota Guardianship Program to act as her guardian.

[¶ 13.] It is the appointment of this third-party guardian that Jeri challenges. She claims the court erred in making the appointment, because it was contrary to Grace's springing power of attorney, the terms of which eliminated her need for a guardian. In the alternative, she argues that if the power of attorney did not effectively eliminate the need for a guardian, it served as Grace's nomination of her as guardian. We disagree.

[¶ 14.] In general, a power of attorney "must be strictly construed and strictly pursued." 3 Am.Jur.2d *Agency* § 31 (1986); *Scott v. Goldman,* 82 Wash.App. 1, 917 P.2d 131, 133 (Wash.App. Div. 2 1996) (stating powers of attorney are strictly construed). Grace's power of attorney is intended to be "broad,"[2] and must be construed as such. However, only those powers specified in the document are granted to the attorney-in-fact. *See Scott,* 917 P.2d at 133; *see also In re Estate of Crabtree,* 550 N.W.2d 168, 170 (Iowa 1996) (citations omitted) (stating "a power of attorney must be strictly construed and the instrument will be held to grant only those powers which are specified"). Here, Grace's power of attorney does not specifical-

ly grant the attorney-in-fact the powers of guardianship and, therefore, it cannot be construed to eliminate the need for the appointment of a guardian.

[¶ 15.] In addition, we recognize that a guardian and an attorney-in-fact are two separate and distinct entities.[3] *See* SDCL 29A–5–102; SDCL 27A–16–1; *see, e.g., Scott,* 917 P.2d at 134. A guardian may be appointed without the ward's consent or capacity and is "substituted by law." *See* 3 Am.Jur.2d *Agency* § 5 (1986). Conversely, an attorney-in-fact is appointed by the individual, not the court, and the individual may modify or abrogate the attorney-in-fact's duties and powers. *Id.*

[¶ 16.] Grace's power of attorney recognizes this distinction. It addresses the appointment of a guardian, when it sets forth the manner in which it becomes effective. It specifically provides that it becomes effective when her physician and attorney, or two physicians, certify in writing that she is disabled or incapacitated, *"or when a court of competent jurisdiction declares [her] incompetent or incapacitated and appoints a guardian or conservator."* (Emphasis added.)

[¶ 17.] Clearly, this language demonstrates that the instrument treats a guardian and an attorney-in-fact as two distinct entities. The power of attorney becomes effective upon a guardian's appointment; it does not replace the need for such appointment.

[¶ 18.] Moreover, the record establishes that the power of attorney did not become effective until the circuit court's decision became final. Grace was not declared disabled or incompetent until November 10, 1997, when the court issued such a declaration.

**2.** Attorney Wesley W. Buckmaster drafted the instrument and testified at the hearing that it was intended to be a broad power of attorney.

**3.** SDCL 29A–5–102 defines guardian as "one appointed by the court to be responsible for the personal affairs of a ... protected person[.]" Attorney-in-fact is defined as "a private attorney authorized by another to act in his place and stead, either for some particular purpose, as to do a particular act, or for the transaction of business in general, not of a legal character."

Black's Law Dictionary 129 (6thEd 1990). *See also* SDCL 27A–16–1 (attorney-in-fact is defined as "any person designated by a principal through a power of attorney to make decisions ... for the principal"); *Scott,* 917 P.2d at 134 (stating a guardian is one who is appointed by the court and must follow statutory duties; whereas, an attorney-in-fact is one who is appointed by a principal and whose authority is limited to the specific powers stated in the power of attorney).

Without this declaration, the power of attorney had no force or effect.

[¶ 19.] Further, upon the effective date, Doc became the attorney-in-fact, not Jeri. For her to assume the role of attorney-in-fact, one of two things must have taken place: (1) Doc's death, or (2) Doc's incompetency. The trial court found that, at the time of the hearing, Doc was neither deceased nor incompetent.[4] In addition, even though the record shows that guardians had been appointed for Doc, "[t]he appointment of a guardian or conservator of a protected person does not constitute a general finding of legal incompetence unless the court so orders, and the protected person shall otherwise retain all rights which have not been granted to the guardian or conservator." *See* SDCL 29A–5–118. As evidenced by Jeri's testimony, no court had found Doc incompetent.[5] Accordingly, Doc, not Jeri, became Grace's attorney-in-fact upon the court's order.

[¶ 20.] In addition, Jeri claims that if the springing power of attorney did not eliminate the need for a guardian of Grace, it served as Grace's nomination of her as guardian. To support this claim, she points to the fact that Grace had never executed any other documents with agency powers, and that she had sufficient capacity at the time of the execution of the power of attorney to show her preference for Jeri. We find these claims to be without merit.

[¶ 21.] SDCL 29A–5–304 addresses a protected person's nomination for, and the court's appointment of, a guardian for the protected person. It provides, in part:

Any individual who has sufficient capacity to form a preference may at any time nominate any individual or entity to act as his guardian or conservator. The nomination may be made in writing, by an oral request to the court, or may be proved by any other competent evidence. The court shall appoint the individual or entity so nominated if the nominee is otherwise eligible to act and would serve in the best interests of the protected person.

[¶ 22.] We find that the requirements set forth in the statute were not met here; therefore, the springing power of attorney cannot be construed as a nomination. It is not a written nomination and, obviously, is not an oral request. In addition, it does not serve as other competent evidence to prove the nomination. Simply, the power of attorney sets forth the attorney-in-fact's powers and duties and names Doc as attorney-in-fact and Jeri as the alternate. It establishes nothing else and certainly cannot be characterized as a nomination. Accordingly, we find no abuse of discretion.

[¶ 23.] **2. The trial court did not err in appointing a third-party guardian for Grace based on its finding that appointing Jeri would not be in Grace's best interests.**

[¶ 24.] When appointing a guardian for a protected person, even if the individual has made an effective nomination, SDCL 29A–5–304 requires the court to consider the best interests of that individual. The statute, in pertinent part, provides:

The court shall appoint the individual or entity so nominated if the nominee is otherwise eligible to act and would serve in the best interests of the protected person.

In the absence of an effective nomination . . . the court shall appoint as guardian or conservator the individual or entity that will act in the protected person's best interests. In making that appointment, the court shall consider the proposed guardian's or conservator's geographic location, familial or other relationship with the protected person, ability to carry out the powers and duties of the office, commitment to promoting the protected person's welfare, any potential conflicts of interest, and the recommendations of the spouse, the parents or other interested relatives, whether made by will or otherwise.

---

4. Doc Blare passed away on April 12, 1998.

5. Jeri testified that the court's findings of fact and conclusions of law in Doc's previous guardianship proceedings stated Doc was not incompetent.

In addition, this Court has stated that "[a]lthough the general inclination in this area is to appoint family members, and most statutes so provide, the best interests of the protected person is the overriding interest." *Rich*, 520 N.W.2d at 67..

[¶ 25.] Jeri claims that the court abused its discretion in appointing a third-party guardian for Grace, because the record does not support the court's findings that she would not act in Grace's best interests. We disagree.

[¶ 26.] The circuit court determined that Grace's interests would be best served by appointing the South Dakota Guardianship Program as her guardian. In addition, the court found that, because of the relationship between Jeri and J.D., appointing Jeri as guardian was not in Grace's best interests. The court specifically found that, in the past, Jeri had refused to allow J.D. to participate in decisions involving Grace's health and welfare, and that she would continue her refusal in the future. The court determined that these actions were detrimental to Grace's health and welfare.

[¶ 27.] Upon close review, we find ample evidence in the record to support the court's decision. J.D. testified that he was not kept informed of decisions concerning Grace. Specifically, he was not informed when she was moved from Serenity Corner, near Spearfish, South Dakota, to the Crook County nursing home and hospital in Sundance, Wyoming. The decision to move Grace was made by Doc's guardians, a doctor, and a psychologist. J.D. had no involvement in the decision. Moreover, Jeri testified that she is not in contact with J.D. and only communicates with him through her attorney.

[¶ 28.] In addition, the court had before it a report from Gordon Swanson, the appointed court representative.[6] In his report, Swanson stated that Grace was "clearly a proper candidate for guardianship." He also stated that the breakdown in the relationship between the daughters and the Blares' caretakers at Our House, in Sturgis, South Dakota, was a concern.[7] Swanson further expressed concern about the history and continuing difficulties between Doc's guardians and J.D. Because of these concerns, Swanson recommended a third-party guardian for both Grace and Doc,[8] stating that a third-party guardianship may be the "best way to assure that somebody with no particular agenda or biases is looking out for the best interests of the protected persons."

[¶ 29.] As this Court has stated, "[s]ubject to statutory restrictions, the selection of the person to be appointed guardian is a matter which is committed largely to the discretion of the appointing court." *Jacobsen*, 482 N.W.2d at 636 (citing 30 Am.Jur.2d *Guardian and Ward* § 27 (1969)). Here, the trial court concluded that Grace's interests would be best served by a third-party guardian. We find that a judicial mind, in view of the law and the circumstances of this case, could have reached the same conclusion. Therefore, there was no abuse of discretion.

[¶ 30.] Affirmed.

[¶ 31.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

---

6. The court appointed Swanson as its representative and instructed him to:
    (1) interview the parties, the proposed guardian and conservator, the evaluator, and Grace;
    (2) explain the contents of the notice and petition to Grace;
    (3) determine whether Grace would be able to attend the hearing;
    (4) submit a written report; and
    (5) make a recommendation as to the relief requested.

7. Our House.is currently an adult foster care residence. At the time the Blares resided there, it was a residential living center.

8. Swanson stated that he did not believe the daughters had done anything wrong as co-guardians for Doc, but still believed it to be in the best interest of Grace and Doc to have third-party guardians.