#26375-aff & rem-JKK

**2013 S.D. 12**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE
GUARDIANSHIP AND CONSERVATORSHIP
OF MARGARET "PEGGY" NELSON,
A PERSON IN NEED OF PROTECTION

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE WARREN G. JOHNSON
Judge
\* \* \* \*

TIMOTHY J. VANDER HEIDE
KENNETH E. BARKER of
Barker Wilson Law Firm, LLP
Belle Fourche, South Dakota        Attorneys for appellant
       John Rice.


LESTER NIES of
Hood & Nies, PC
Spearfish, South Dakota


and


DAVID S. BARARI of
Goodsell Quinn, LLP
Rapid City, South Dakota        Attorneys for appellee and
       conservator Pioneer Bank &
       Trust.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 8, 2013

OPINION FILED **01/30/13**

#26375

KONENKAMP, Justice

[¶1.]    In this guardianship and conservatorship action, we examine a challenge to the circuit court's jurisdiction brought by an individual accused of plundering the protected person's estate by misuse of a power of attorney.

**Background**

[¶2.]    Margaret "Peggy" Nelson and her husband owned and operated a ranch near Aladdin, Wyoming. They had no children. After Peggy's husband died, she became the sole owner and operator of the ranch. Susan Rice is a great niece of Peggy's late husband. In the late 1990s, Susan and her husband, John Rice, moved close to Peggy's ranch. They claimed that as Peggy aged and was able to do less, they helped her manage the ranch and her personal needs. On August 21, 2007, when Peggy was 91 years old, she executed a durable power of attorney giving John Rice (Rice) numerous powers over her personal and financial affairs. The circumstances surrounding the execution of the power of attorney are not developed in the record.

[¶3.]    At some point, possibly in 2008, Peggy moved into an assisted living center in Aladdin and later to a facility in Spearfish, South Dakota. Rice continued to manage the ranch and take care of Peggy's needs as her power of attorney. But Peggy's relatives began to suspect that Rice was taking advantage of Peggy and plundering her estate.

[¶4.]    In March 2010, Peggy's nephew, John Corbett, learned that Peggy's dementia required her transfer to a care facility in Spearfish. Corbett and Peggy's niece, LaQuita Allison, decided to examine Rice's activities more closely. According to Corbett and Allison, Rice used his position as Peggy's power of attorney to

-1-

become (1) the joint owner of over $300,000 in certificates of deposit previously owned solely by Peggy, (2) the joint owner with right of survivorship of Peggy's ranch, valued at $3,860,530, and (3) the owner of certain bank accounts previously owned solely by Peggy, which allowed Rice to pay for personal loans and make payments to himself.

[¶5.]    On August 10, 2010, when Peggy was 94 years old, Allison and Corbett petitioned the circuit court to appoint a guardian and conservator for Peggy and her estate. The petition asserted that Peggy suffers from dementia and is unable to take care of her needs or finances. But the bulk of the petition related to Rice's actions and the risk to Peggy's estate because of his "handling of Peggy's financial and personal affairs." The petitioners requested leave to file the petition without a report evaluating Peggy's need for a guardian and conservator, which is required by SDCL 29A-5-306, and asked the court to waive the requirement in SDCL 29A-5-307 that the petitioners file a financial statement. The petitioners proposed the appointment of Pioneer Bank & Trust in Belle Fourche, South Dakota, as Peggy's conservator and attorney Michael Trump as her guardian.

[¶6.]    On August 16, 2010, the circuit court issued a notice of hearing to be held on September 22, 2010, to address the petition for guardianship and conservatorship. Notice was personally served on Peggy. On September 16, 2010, Rice objected to the petition, "by and through his attorney, Scott J. Odenbach[.]" Rice requested that the court continue the hearing "to allow Respondent to fully address Petitioners' claims and mount a defense thereto[.]" In Rice's verified objection, he insisted that he had "carefully and thoughtfully assisted [Peggy] in safeguarding and protecting her assets[.]" Rice requested that if the court decided

to appoint a guardian and conservator, it appoint him, "as per paragraph twenty-one (21) of the durable power of attorney."

[¶7.] At the hearing, Peggy did not appear, and neither the court nor the parties discussed her absence. Rice moved for a continuance and argued that the allegations made against him "are false," as he had "safely, carefully, and prudently taken care of [Peggy's] finances." He insisted that Peggy was competent to execute the power of attorney and that there was no emergency necessitating an appointment. He further claimed that Peggy would oppose the appointment of Pioneer Bank & Trust, as she fired the bank years earlier.

[¶8.] The court denied Rice's request for a continuance. Much of the hearing related not to the procedural framework governing the appointment of a guardian and conservator under SDCL chapter 29A-5, but to what could be done at that moment to protect Peggy's estate from Rice. Counsel for the petitioners maintained that a guardianship and conservatorship was warranted because "we've made a prima facie case to establish the guardianship — in that a power of attorney cannot self-deal as a matter of law in South Dakota." Ultimately, the court determined that an appointment of a temporary guardian and conservator would best protect Peggy. The petitioners agreed, asserting that "[i]t doesn't have to be permanent. At this point in time if you just look at the prima facie evidence . . . it shows self-dealing and it shows that this property has been improperly transferred either right now in terms of the land or will upon the death of [Peggy]."

[¶9.] On October 1, 2010, the circuit court issued an order appointing a temporary emergency guardian and conservator for Peggy "in order to protect her personal and financial interests." The court declared that Peggy "lacks the capacity

-3-

to meet her essential requirements for her health, care, safety, habilitation and therapeutic needs without the assistance and protection of a guardian, and lacks the capacity to manage her property and other financial affairs in order to provide her support or defend her property from claims[.]" The court cited SDCL 29A-5-315 and appointed Pioneer Bank & Trust as her temporary conservator and Michael Trump as her temporary guardian. The court waived the requirement that either post a bond or security.

[¶10.]     Indicating that it did not follow the "regular procedures for appointment of a guardian or conservator," the court found that such "may result in significant harm to [Peggy's] estate." The court waived the "[o]ngoing requirements of annual accounting and reports by the Guardian and Conservator," but ordered that the guardian and conservator "provide the court with monthly reports detailing their charges to the estate for provision of their services."[1] The court granted the

---

1.     The record indicates that on December 22, 2010, Guardian Trump filed a report with the court on Peggy's current mental, physical, and social condition. Over the next couple months, the court received and then granted a contested motion for approval of conservator expenses, a motion for guardianship fees, and a motion for appraisal fees, and received a contested motion to have funds deposited with the court. Then, on March 15, 2011, the attorney for Conservator Pioneer Bank & Trust moved for attorney's fees in the sum of $16,304.80. No hearing was held and no objections were received. The court granted the request. The next major filing occurred almost a year later when the conservator submitted its annual accounting. It requested the following expenses for the 2011 calendar year: $13,319.80 in fiduciary fees, $28,011.97 in attorney's fees (which included the $16,304.80 previously granted), $24,977.35 in attorney's fees for the litigation against the Rices, $5,000 in an attorney retainer for the litigation against the Rices, $4,635.73 in accounting fees (including a portion previously granted), $4,770.00 appraisal fee (previously approved), $2,337.30 in guardianship fees, and $611.10 owed to Attorney Max Main.

petitioners leave to file their petition without the report required by SDCL 29A-5-306, but ordered that "a report shall now be prepared and filed with this court." Also waived was the requirement that petitioners file a financial statement mandated by SDCL 29A-5-307. Finally, the court declared that the powers granted to Rice by the power of attorney would be superseded by the order of the court.

[¶11.]     On December 10, 2010, the court entered an order extending the appointment of the temporary emergency guardian and conservator. Nothing in the record indicates that a hearing was held before the court granted this extension. But the order declares that the parties stipulated to the extension, and that the court ordered the extension "for good cause shown." Then, on February 25, 2011, LaQuita Allison, John Corbett, Pioneer Bank & Trust, and Michael Trump stipulated with John and Susan Rice that a permanent guardian and conservator be appointed for Peggy, namely Pioneer Bank & Trust as the conservator and Trump as the guardian. The court entered an order approving the stipulation and agreement on March 1, 2011. Peggy was served with notice of the order on March 2, 2011.

[¶12.]     A year later, on March 13, 2012, Rice petitioned the circuit court to remove the appointed guardian and conservator under SDCL 29A-5-504 and requested the court to set aside its previous orders as void under SDCL 15-6-60(b)(4). Rice asserted that the court's orders were without jurisdiction because no evaluation report was filed as required by SDCL 29A-5-306. He faulted the court for not requiring the filing of a financial statement under SDCL 29A-5-307, for not identifying what good cause existed to support extending the temporary appointment, for not appointing an attorney or a court representative for Peggy,

and for eliminating the requirement that the conservator and guardian file reports and documents as part of their appointments.

[¶13.] A hearing was held on April 9, 2012. Counsel for Pioneer Bank & Trust conceded that no evaluation report had been filed with the court, but insisted that the failure did not deprive the court of jurisdiction. Counsel further argued that the court did not need to appoint an attorney to represent Peggy because Peggy never objected to anything in these proceedings. Counsel claimed that Rice's petition to remove the guardian and conservator was a "red herring," as Rice was merely attempting to thwart the civil suit against him.

[¶14.] On May 7, 2012, the court issued findings of fact and conclusions of law denying Rice's petition for removal. It found that it had jurisdiction over Peggy and her estate. It determined that Peggy was represented by Rice and Attorney Odenbach through the agency of Rice. It recognized that an evaluation report, required by SDCL 29A-5-306, remained to be filed. It concluded that Rice, in his role as Peggy's power of attorney, was empowered to stipulate to the permanent appointments. It found that it had "the authority to waive the filing of a financial statement referred to in SDCL 29A-5-307," and "[t]he delay or failure by the conservator to file a separate inventory within 90 days after appointment or to file monthly reports with the court [was] harmless error[.]" Finally, the court found that Rice's removal petition "was filed to stay the proceedings" in the civil suit against him and was "not in the best interest of [Peggy]."

[¶15.] On appeal, Rice contends that the court never acquired jurisdiction over Peggy or the subject matter due to the court's failure to comply with the mandates of SDCL chapter 29A-5. Although a court's decision to appoint a

guardian and conservator is ordinarily reviewed for an abuse of discretion, *see In re Guardianship of Blare*, 1999 S.D. 3, ¶ 9, 589 N.W.2d 211, 213, this appeal challenges the court's subject matter and personal jurisdiction; therefore, our review is de novo. *See Reaser v. Reaser*, 2004 S.D. 116, ¶ 27, 688 N.W.2d 429, 437 (citation omitted).

### Analysis and Decision

[¶16.]     Rice contends that the court's failure to follow the mandates of the South Dakota Guardianship and Conservatorship Act, SDCL chapter 29A-5, extinguished the court's "authority to bring a person alleged to be in need of protection before the court and to take control of that person and her property." In particular, Rice asserts that under SDCL 29A-5-308, a court acquires jurisdiction only when, *before the hearing*, the "person alleged to need protection" is served with *all* three of the following: (1) the notice; (2) a copy of the petition; and (3) a copy of the evaluation report. Because the notice given to Peggy before the hearing did not include an evaluation report, Rice maintains that all subsequent actions by the court were without authority or jurisdiction and must be vacated. Rice further points to the court's failure to appoint Peggy a lawyer or court representative under SDCL 29A-5-309 and the lack of an evidentiary hearing under SDCL 29A-5-312.

[¶17.]     "Subject matter jurisdiction is conferred solely by constitutional or statutory provisions." *In re Koch Exploration Co.*, 387 N.W.2d 530, 536 (S.D. 1986). Here, SDCL 29A-5-108 gives the court of the county in which the action is first commenced exclusive jurisdiction over the action. Therefore, the circuit court had subject matter jurisdiction over the guardianship and conservatorship action concerning Peggy. The court also had personal jurisdiction when, under SDCL 29A-

5-308, Peggy was served with notice of the petition and the hearing. The court's jurisdiction was not extinguished because the evaluation report was not served on Peggy before the hearing. Under SDCL 29A-5-306, the court may grant a petitioner leave to file the petition without the evaluation report, which was done in this case.

[¶18.] Rice claims that the court was required to remove Peggy's guardian and conservator under SDCL 29A-5-504. He directs us to no specific statutory ground warranting the removal of Peggy's guardian or conservator. Thus, the court did not abuse its discretion when it refused to remove Michael Trump as Peggy's guardian and Pioneer Bank & Trust as her conservator.

[¶19.] Although the substance of Rice's appeal is without merit, the record before us raises many concerns over the manner in which the court and the parties conducted these proceedings. "The appointment of a guardian and conservator is an extraordinary intervention in a person's life and affairs, and the [Guardianship and Conservatorship] Act lays out standards and procedures that are designed to ensure careful consideration [of] and respect for the rights of the subject of the proceedings." *In re Orshanksy*, 804 A.2d 1077, 1080 (D.C. 2002). It is undisputed that neither the circuit court nor the parties followed the mandates of SDCL chapter 29A-5. Consequently, Peggy's rights and interests were not protected to the extent the law requires. *See generally* Sally Balch Hurme & Erica Wood, *Guardian Accountability Then and Now: Tracing Tenets for an Active Court Role*, 31 Stetson L. Rev. 867 (2002). Therefore, we affirm the circuit court's assumption of jurisdiction and remand for the court to follow SDCL chapter 29A-5 consistent with this opinion.

[¶20.]    An appointment may be requested by the filing of a petition "by an interested relative, . . . or by any other interested person[.]" SDCL 29A-5-305. The petition "shall" include specific information, *see* SDCL 29A-5-305, and "shall include a report evaluating the condition of the person alleged to need protection[.]" SDCL 29A-5-306 (providing a list of required information). "[F]or good cause shown," a court "may grant leave to file the petition without an evaluation report." *Id.* But, after that leave is granted, "the court shall order the appropriate assessments or examinations and shall order that a report be prepared and filed with the court." *Id.*

[¶21.]    Here, interested relatives filed a petition and were granted leave to file the petition without an evaluation report. Yet to date, no evaluation report has been filed with the court. Had there been full statutory compliance, the court would have learned about "the nature, type, and extent of the person's incapacity, including the person's specific cognitive and functional limitations[.]" *See* SDCL 29A-5-306(1). Moreover, the report would have included "[e]valuations of the person's mental and physical condition and, . . . a description of the services, if any, currently being provided for the person's health, care, safety, habilitation, or therapeutic needs and a recommendation as to the most suitable living arrangement and, if appropriate, treatment or habilitation plan and the reasons therefor." SDCL 29A-5-306(2), (3). Finally, the report would have included a "signature of a physician, psychiatrist or licensed psychologist, and the signatures of any other individuals who made substantial contributions toward the report's preparation," and "[t]he date of any assessment or examination upon which the

report is based[.]" SDCL 29A-5-306(8), (9). An evaluation report meeting the mandates of SDCL 29A-5-306 must be filed with the court.

[¶22.]    The petitioners were also required to "file a statement of the financial resources of the person alleged to need protection which shall, to the extent known, list the approximate value of the real and personal estate and the anticipated annual gross income and other receipts." SDCL 29A-5-307. Without any statutory authority, the court waived the filing of this financial statement. At this point, however, Peggy's estate has been under the management and control of her conservator, Pioneer Bank & Trust. As her conservator, Pioneer Bank & Trust was required to "file with the court an inventory of the real and personal estate of the . . . protected person which has come into the conservator's possession or knowledge." SDCL 29A-5-407 (listing the specific details to be included in the inventory). If this inventory has not been filed to date, the court should order the inventory be filed and a copy mailed to the individuals and entities specified in SDCL 29A-5-410.

[¶23.]    After a petition and an evaluation report are filed, "the court shall promptly issue a notice fixing the date, hour, and location for a hearing to take place within sixty days." SDCL 29A-5-308. Although the evaluation report was not submitted with the petition, the court did fix the time and place for the hearing in compliance with the statute. Moreover, the court gave Peggy notice of the hearing as required by the statute.

[¶24.]    But merely giving Peggy notice of the hearing is insufficient. Because Peggy did not contest the petition and was not represented by an attorney, the court should have "either appoint[ed] a court representative to make an investigation and recommendation concerning the relief requested in the petition," or "order[ed] the

-10-

person alleged to need protection to attend the hearing on the petition." SDCL 29A-5-309; *see* SDCL 29A-5-310 (listing the duties of the court representative). The entire proceeding was conducted in Peggy's absence. From the record, it appears little if any effort was made to ascertain her wishes. Yet SDCL 29A-5-312 provides that "[t]he person alleged to need protection is entitled to attend the hearing, to oppose the petition, to be represented by an attorney of his own choice, to demand a jury trial, to present evidence, to compel the attendance of witnesses and to confront and cross-examine all witnesses."

[¶25.]     The circuit court declined full compliance with SDCL 29A-5-309 because Peggy (1) did not express any desire to contest the petition, (2) did not personally attend the hearings, (3) did not request an attorney or court representative, and (4) was represented throughout the proceedings by Rice (who held her power of attorney) and Attorney Odenbach, who appeared as Rice's attorney. During the April 2012 hearing, the court also remarked that Peggy was represented by an attorney because Guardian Trump is a lawyer. Trump, however, is Peggy's guardian, appointed to protect her best interests despite her wishes. *See* SDCL 29A-5-402 (responsibilities of a guardian). He is not her lawyer, who would advocate for her wishes despite what might be in her best interests. *See In re Guardianship and Conservatorship of Stevenson*, 2013 S.D. 4, ¶ 16, ___ N.W.2d ___, ___, 2013 WL 125334; *In re M.R.*, 638 A.2d 1274, 1285 (N.J. 1994) (citing Note, *The Role of Counsel in Guardianship Proceedings of the Elderly*, 4 Geo. J. Legal Ethics 855, 863 (1991)).

[¶26.]     The mandates of SDCL 29A-5-309 are clear. If the protected person is not represented by an attorney, the court *shall* order that the protected person

attend the hearing *or* appoint a court representative to investigate the matter. Peggy never attended the hearing and there is no evidence to support that Attorney Odenbach represented her. Odenbach was hired by Rice to challenge the claims made against him over his alleged actions *against* Peggy. The court must follow the mandates of SDCL 29A-5-309.

[¶27.]     A hearing is an essential part of a guardianship action.[2] Before an appointment of a guardian and conservator can be made, there must exist clear and convincing evidence of a need. SDCL 29A-5-312. Once a need is established, it is for the court "alone" to determine "whether a guardian or conservator will be appointed, the type thereof, and the specific areas of protection, management and assistance to be granted[.]" *Id.* The "court shall consider the suitability of the proposed guardian or conservator, the limitations of the person alleged to need protection, the development of the person's maximum feasible self-reliance and independence, the availability of less restrictive alternatives, and the extent to which it is necessary to protect the person from neglect, exploitation, or abuse." *Id.*

[¶28.]     Here, although Peggy's need for a guardian and conservator seems apparent, the stipulation to appoint a permanent guardian and conservator entered into by the petitioners, the conservator, and the guardian *along with* the alleged exploiter of Peggy's estate, Rice, does not satisfy the court's responsibility under SDCL 29A-5-312. The Legislature made it the court's duty "alone to decide"

---

2.     In this case, the circuit court extended the temporary appointments for "good cause shown," without evidence of what good cause was shown. There is no motion to extend the appointments in the record, transcript of a hearing, or evidence to indicate that the extension was anything other than convenience.

whether to make the appointment, to determine the type of appointment necessary, the powers to be granted, the specific areas in need of protection, management, and assistance, and the suitability of the proposed guardian and conservator. *See id.* That SDCL 29A-5-312 was not followed in this case is further established by the letters of guardianship and conservatorship issued by the court with respect to Peggy. The letters state that the guardian and conservator are appointed "as set forth in the Order of Oct 1, 2010." Yet SDCL 29A-5-314 requires that the letters inform Peggy of "the specific areas of protection or assistance granted to [the] guardian" and the "specific areas of management and assistance granted" to the conservator. Moreover, the parties' stipulation does not identify the powers of the guardian or conservator. Instead, the stipulation provides that the powers of the guardian "shall remain in full force and effect," and the powers of the conservator "shall become full and permanent and shall continue until revoked by this court[.]" The court must comply with SDCL 29A-5-312 and administer the guardianship to ensure future compliance with SDCL chapter 29A-5.

[¶29.]     Ultimately, we take no issue with the court's finding that Rice's petition to remove the guardian and conservator was an effort to thwart the civil suit against him. Indeed, if Rice's petition were granted and the orders of the court vacated, Peggy's multimillion dollar ranch, among other assets, would ostensibly pass to Rice and his wife upon Peggy's death under the deed he made using his position as Peggy's power of attorney. But this does not excuse compliance with the mandates of SDCL chapter 29A-5. Thus, the matter is remanded for the court to fulfill the requirements of SDCL chapter 29A-5, including its continued administration of the guardianship and conservatorship.

-13-

#26375

[¶30.] Affirmed and remanded with instructions.

[¶31.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.