#26728, #26775-a-GAS

**2014 S.D. 10**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

In the Matter of the
Conservatorship of
DORA LEE GAASKJOLEN,
a Protected Person.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
PERKINS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN W. BASTIAN
Retired Judge

* * * *

JOHN K. NOONEY
MARLI A. SCHIPPERS
Nooney, Solay & Van Norman, LLP
Rapid City, South Dakota       Attorneys for Appellant
                                  Dora Lee Gaaskjolen.


SARAH E. BARON HOUY
MICHAEL M. HICKEY
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota       Attorneys for Appellees Shane
                                  Penfield and Vicki Penfield.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 14, 2014

OPINION FILED **02/26/14**

SEVERSON, Justice

[¶1.]        The Fourth Circuit Court appointed Dacotah Bank as temporary conservator, then permanent conservator, for Dora Gaaskjolen.  Dora appeals, arguing the circuit court erred as a matter of law (1) when it appointed Dacotah Bank as her temporary conservator, and (2) when it appointed Dacotah Bank as her permanent conservator instead of her daughter.  Dora's first argument is moot, and the circuit court did not abuse its discretion in appointing Dacotah Bank as Dora's permanent conservator, accordingly we affirm.

## Background

[¶2.]        Dora is an 87 year-old widow who owns approximately 3,000 acres of ranchland.  In 2007, Dora suffered a traumatic head injury from a farm incident that resulted in a condition called "expressive aphasia."  That condition makes communication difficult, even if the individual knows what they want to say.  Dora also suffers from severe dementia, rheumatoid arthritis, chronic atrial fibrillation with a pacemaker in place, and valvular heart disease, status post mitral valve replacement.  Additionally, Dora had a left total hip arthroplasty and a right hip hemiarthroplasty.  Dora's injury and illnesses resulted in her inability to care for herself.

[¶3.]        Starting in 2007, one of Dora's daughters (Audrey Lorius) began providing full-time, in-home care.  Dora's other daughter (Vicki Penfield) managed Dora's bills.  At that time, Audrey had rent-free use of the ranchland's south half while Vicki leased the north half for approximately $4,000 per year.

[¶4.] In August 2012, Dora terminated Vicki's lease. Vicki consulted her son (Shane Penfield), an attorney, about the lease situation and the possibility of a conservator for Dora. Shane filed an ex-parte petition for appointment of temporary conservator with the circuit court on September 4, 2012. The next day, under SDCL 29A-5-315, the circuit court ordered Dacotah Bank to be Dora's temporary conservator for ninety days. On November 13, 2012, both parties stipulated to extend the temporary conservatorship for an additional ninety days.

[¶5.] On October 23, 2012, Shane moved for Dacotah Bank to be Dora's permanent conservator. On February 6, 2013, Dora moved to set aside the appointment of Dacotah Bank as temporary conservator and nominated her daughter Audrey to be her conservator. On February 20, 2013, the circuit court heard the motions.

[¶6.] Dora testified at the hearing. The record indicates that Dora had a difficult time responding to questions and her answers were often unintelligible. She did, however, say she wanted Audrey to be her conservator. Dora's physician, Dr. Frank Thorngren, also testified at the hearing. Dr. Thorngren presented an evaluation report and testified to Dora's physical and mental condition. Dr. Thorngren recommended a conservator based on Dora's incapacities. Vicki also testified at the hearing, while Audrey, who was present, did not.

[¶7.] On February 26, 2013, the circuit court issued its memorandum decision. It found "by clear and convincing evidence that [Dora's] ability to respond to people, events and environments is impaired by dementia and deficits in memory, orientation, problem solving, to such an extent that she lacks the capacity to

manage property and handle financial affairs without the assistance and protection of a conservator." Also, based on Audrey's bankruptcy, potential inability to post the required bond, ongoing conflicts with family members, and questionable financial management practices, the circuit court found insufficient evidence to support a finding that Audrey was "eligible to act and would serve in [Dora's] best interests." In contrast, the circuit court found Dacotah Bank's qualifications uncontested and "eligible to act and would serve the best interests of the protected person." Ultimately, the circuit court granted Shane's motion for Dacotah Bank to be Dora's permanent conservator and denied Dora's motion to set aside the appointment of Dacotah Bank as temporary conservator and nomination of Audrey as conservator. The circuit court entered its order on March 4, 2013, pending submission of findings of fact and conclusions of law.

[¶8.] On March 14, 2013, Dora moved for reconsideration of appointment of Audrey as permanent conservator. The circuit court heard Dora's motion on April 3, 2013, and denied it through order on April 15, 2013. A day later, the circuit court entered its findings of fact and conclusions of law pertaining to its original memorandum decision. Dora timely appeals the circuit court's order denying reconsideration of Audrey as permanent conservator, memorandum decision, findings of fact, and conclusions of law. On May 3, 2013, the circuit court ordered Dacotah Bank as Dora's permanent conservator. Dora also timely appeals that order. We consolidated Dora's two appeals.

## Standard of Review

[¶9.]     We review a circuit court's decision to appoint a conservator for an abuse of discretion. *In re Guardianship of Nelson*, 2013 S.D. 12, ¶ 15, 827 N.W.2d 72, 76 (citing *In re Guardianship of Blare*, 1999 S.D. 3, ¶ 9, 589 N.W.2d 211, 213). An abuse of discretion is "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Thurman v. CUNA Mut. Ins. Soc'y*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616 (citations omitted). "The 'circuit court's factual findings are reviewed under the clearly erroneous standard.'" *In re Guardianship of S.M.N.*, 2010 S.D. 31, ¶ 11, 781 N.W.2d 213, 218 (quoting *In re Guardianship and Conservatorship of A.L.T. & S.J.T.*, 2006 S.D. 28, ¶ 37, 712 N.W.2d 338, 347). "Findings of fact are clearly erroneous when a complete review of the evidence leaves this Court with a 'definite and firm conviction that a mistake has been made.'" *Id.* (quoting *A.L.T. & S.J.T.*, 2006 S.D. 28, ¶ 37, 712 N.W.2d at 347). Legal questions and conclusions of law are reviewed de novo. *In re Woodruff*, 1997 S.D. 95, ¶ 9, 567 N.W.2d 226, 228.

## Analysis

[¶10.]     ***Temporary Conservatorship***

[¶11.]     Dora argues the petition for appointment of temporary conservator was legally insufficient and the circumstances did not warrant appointing a temporary conservator under SDCL 29A-5-315. Shane argues Dora's appeal on this issue is moot because a permanent conservator is now in place. We agree; because no exception to the mootness doctrine applies, we need not address whether the circuit court erred by appointing Dacotah Bank as Dora's temporary conservator.

[¶12.]       ***Permanent Conservatorship***

[¶13.]       Next, Dora argues the circuit court erred by appointing Dacotah Bank as permanent conservator instead of her nominee—Audrey. Shane argues the circuit court was correct when it found insufficient evidence to support a finding that Audrey was eligible to act and would serve in Dora's best interests. Further, Shane argues the circuit court was correct when it found that Dacotah Bank was eligible to act and would serve in Dora's best interests.

[¶14.]       Whether Dora needs a conservator is not at issue; who should serve that role is. SDCL 29A-5-304 allows Dora to make a choice, stating in part:

> Any individual who has sufficient capacity to form a preference may at any time nominate any individual or entity to act as his guardian or conservator. The nomination may be made in writing, by an oral request to the court, or may be proved by any other competent evidence. The court shall appoint the individual or entity so nominated if the nominee is otherwise eligible to act and would serve in the best interests of the protected person.
> . . . .

At the hearing on February 20, 2013, Dora was asked, "if you wanted a conservator, who would that be?" Dora answered, "Audrey." When asked why, Dora could not answer. Although noting Dora's confusion, the circuit court did not find that Dora lacked "sufficient capacity to form a preference[.]" SDCL 29A-5-304.

[¶15.]       But SDCL 29A-5-304's analysis does not end with the individual's nomination. The circuit court then must determine whether the nominee "is otherwise eligible to act and would serve in the best interests of the protected person." SDCL 29A-5-304. *See Blare,* 1999 S.D. 3, ¶ 24, 589 N.W.2d at 215 ("When appointing a guardian [or conservator] for a protected person, even if the individual

has made an effective nomination, SDCL 29A-5-304 requires the court to consider the best interests of that individual.").

[¶16.]    Addressing Audrey's eligibility to act and serve in Dora's best interests, the circuit court's findings of fact reflect that: Audrey went through bankruptcy fifteen years ago, Audrey may not qualify for a required bond, Audrey and other family members are in conflict making her conservatorship potentially contentious, Audrey has a history of questionable financial management practices, and Audrey as conservator causes potential conflicts of interests. Also, the circuit court stated it was not "presented with any evidence that Audrey Lorius is 'capable of providing an active and suitable program of . . . conservatorship.'"[1] *See* SDCL 29A-5-110. As a result, the circuit court found "insufficient evidence to support a finding that Audrey Lorius is eligible to act and would serve in the best interests of the protected person." Upon review, we cannot say that those findings are clearly erroneous.

[¶17.]    Even so, Dora argues the circuit court made a legal error by utilizing a standard based on the alleged inapplicable portion of SDCL 29A-5-304 and by placing a burden on Dora to establish that Audrey was eligible to act and would

---

1.    The circuit court noted that Audrey had not appeared in the proceedings and did not submit an affidavit. A review of the record indicates that Audrey submitted an affidavit on March 14, 2013, in support of Dora's motion for reconsideration after the circuit court's memorandum decision on February 26, 2013.

serve in Dora's best interests.[2]

[¶18.]      "[A]lthough the general inclination in this area is to appoint family members, and most statutes so provide, *the best interests of the protected person is the overriding interest.*"  *Blare*, 1999 S.D. 3, ¶ 24, 589 N.W.2d at 216 (emphasis added) (citing *In re Guardianship of Rich*, 520 N.W.2d 63, 67 (S.D. 1994)).  In making that best interests determination, the circuit court found SDCL 29A-5-304's considerations instructive.  The circuit court did not abuse its discretion by using the factors listed in SDCL 29A-5-304 as instructive.

[¶19.]      Also, Dora takes the circuit court's finding of "insufficient evidence" out of context.  The record does not indicate that the circuit court placed a burden on Dora to establish that Audrey was eligible to act and would serve in Dora's best interests.  Instead, the circuit court properly addressed whether Dora's best interests would be served by appointing Audrey conservator.  The circuit court found they would not.  This Court gives deference to the circuit court's ability to make that determination.  *See Blare*, 1999 S.D. 3, ¶ 29, 589 N.W.2d at 216

---

2.      SDCL 29A-5-304 states in part:

> In the absence of an effective nomination by the protected person, the court shall appoint as guardian or conservator the individual or entity that will act in the protected person's best interests.  In making that appointment, the court shall consider the proposed guardian's or conservator's geographic location, familial or other relationship with the protected person, ability to carry out the powers and duties of the office, commitment to promoting the protected person's welfare, any potential conflicts of interest, and the recommendations of the spouse, the parents or other interested relatives, whether made by will or otherwise. The court may appoint more than one guardian or conservator and need not appoint the same individual or entity to serve as both guardian and conservator.

("[S]ubject to statutory restrictions, the selection of the person to be appointed guardian [or conservator] is a matter which is committed largely to the discretion of the appointing court." (quoting *In re Guardianship of Jacobsen*, 482 N.W.2d 634, 636 (S.D. 1992))).

[¶20.] In contrast, the circuit court found Dacotah Bank "eligible to act and would serve the best interests of the protected person." The circuit court found Dacotah Bank had been providing banking services to Dora "for decades." Further, the circuit court found the bank's qualifications and capabilities are not contested. Lastly, the circuit court determined that none of the concerns raised as to Audrey serving as conservator applied if Dacotah Bank was appointed conservator. Accordingly, the circuit court found "it is in the best interests of [Dora] that Dacotah Bank be appointed as her conservator." The circuit court's finding and conservator appointment has support in the record; the circuit court did not abuse its discretion. Affirmed.

[¶21.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.