#23781-a-MILLER, Retired Justice

**2006 SD 78**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

MAXINE BIENASH,                                   Plaintiff and Appellee,

  v.

RANDY MOLLER AND KATHY MOLLER,       Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE LEE D. ANDERSON
Judge

\* \* \* \*

JEFF COLE of
Zimmer, Duncan & Cole
Parker, South Dakota                        Attorneys for plaintiff
                    and appellee.


SANDER J. MOREHEAD
KRISTINE L. KREITER O'CONNELL of
Woods, Fuller, Shultz and Smith
Sioux Falls, South Dakota                   Attorneys for defendants
                    and appellants.

\* \* \* \*

ARGUED APRIL 25, 2006

OPINION FILED **8/16/06**

#23781

MILLER, Retired Justice

[¶1.]        Kenneth Duebendorfer signed a power of attorney naming Randy and

Kathy Moller (Mollers) as his attorneys-in-fact.  Mollers engaged in acts of self-

dealing using the power of attorney.  Maxine Bienash filed a complaint and the

circuit court granted summary judgment on two counts, breach of fiduciary duty

and fraud.  Mollers appeal.  We affirm.

**Facts and Procedural History**

[¶2.]        Duebendorfer was born on February 1, 1913, and died on April 27,

2003, at the age of ninety.  He was a bachelor who lived modestly, but had

substantial wealth.  Duebendorfer had one sister, Irene Rohrabaugh, who died on

February 23, 2001.  In 1998 Duebendorfer executed a power of attorney naming a

friend, Marcella Hinds, as his attorney-in-fact.  Hinds took care of Duebendorfer on

a daily basis, providing hygiene, meals and transportation.  Hinds also assisted

Duebendorfer in his financial affairs by paying his bills.[1]

[¶3.]        On March 14, 2001, Hinds took Duebendorfer to the State Bank of

Alcester to meet with bank official Lois Anderson to set up a number of bank

accounts and certificates of deposits (CD's).[2]  That day Duebendorfer opened five

different CD's with payable on death (POD) beneficiaries for a total of

approximately $170,000.  One such account was in the name of Kenneth T.

---

1.      Hinds never asked for money, nor was she ever paid by Duebendorfer for
        assisting him.

2.      None of these accounts benefited Hinds or any member of her family.

-1-

Duebendorfer, POD, Mrs. William Bienash[3] $40,000. Duebendorfer also opened two other accounts for a total of approximately $178,000. Those two accounts were in Duebendorfer's name only with no POD beneficiaries.

[¶4.] After Rohrabaugh's death, her great niece Kathy Moller and her husband Randy began to have more frequent contact with Duebendorfer, with Randy attempting to see him once a week. Mollers also began to help care for Duebendorfer, assisting with his hygiene, meals, and household needs. At the same time, Duebendorfer was upset with Hinds over a gun her grandson had borrowed from him, as well as, the care and frequency of visits he was receiving from Hinds. There was also some concern because it was being suggested to Duebendorfer by Randy that Hinds was mishandling or mismanaging his money.[4]

[¶5.] In March of 2002, Randy contacted Attorney Michael McGill to arrange an appointment for Duebendorfer so that he could execute a new power of attorney and will. Ultimately, on March 30, 2002, Duebendorfer signed a new power of attorney naming Mollers as his true and lawful attorneys-in-fact. The powers granted to Mollers under the power of attorney were broad, but general in nature and authorized them to do all things that Duebendorfer would personally have the right to do. Additionally, the power of attorney allowed Mollers to make gifts on Duebendorfer's behalf in the amount of the annual exclusion limit pursuant to the

---

3. Bienash is an elderly first cousin of Duebendorfer.

4. Mollers concede that there is no evidence in the record that Hinds ever had or was stealing, taking, or mishandling any of Duebendorfer's money or property.

Internal Revenue Code. The document did not contain any language giving them the power to self-deal. Additionally, the new will Duebendorfer executed on April 10, 2002, made Mollers the chief beneficiaries of Duebendorfer's estate.[5]

[¶6.] On January 14, 2003, Randy went alone to the State Bank of Alcester and attempted to change the POD beneficiaries on Duebendorfer's accounts. Specifically, Randy wanted to list himself and Kathy as POD beneficiaries on all of the accounts. Bank official Anderson questioned this transaction, wondering if Randy had the authority to make those changes under the power of attorney. She then called McGill who informed her that the power of attorney did not give Randy the authority to self-deal. It was decided that it would be best for Duebendorfer to go to the bank and make the changes himself, or at the least, have Duebendorfer send a written statement authorizing the changes.

[¶7.] Mollers never brought Duebendorfer to the bank to make the changes. Instead, they prepared a document on their home computer which they claimed Duebendorfer signed, authorizing the transfers. Randy was the only person who allegedly saw Duebendorfer sign this document. Importantly, the signature on the document, "Keneth [sic] Deubendorfer" [sic], misspells both his first and last names. On January 15, 2003, Randy changed the POD beneficiary on the CD that designated Bienash as POD beneficiary from $40,000 POD Bienash to $20,000 POD Bienash, $20,000 POD Randy and Kathy Moller. Randy made this same type of change on all the other accounts at the Alcester bank. In addition, Randy changed

---

5. This will was found to be the product of undue influence by Mollers and they have appealed. *See Estate of Duebendorfer,* 2006 SD 79, 721 NW2d 438.

the two accounts that did not have POD beneficiaries to add Randy and Kathy

Moller as POD beneficiaries. All of these changes resulted in approximately

$266,000 in POD benefits to Mollers upon Duebendorfer's death on April 27, 2003.[6]

[¶8.] Bienash filed a complaint against Mollers alleging breach of fiduciary

duty, fraud, conversion and deceit as it related to the power of attorney and the

changes Randy had made to benefit Mollers using that power. Bienash moved for

summary judgment on two counts, breach of fiduciary duty and fraud. The circuit

court granted summary judgment on those two counts. Mollers appeal raising the

following issue:

> Whether the circuit court erred in finding a breach of fiduciary duty as
> a matter of law and granting summary judgment.

## Standard of Review

[¶9.] Our review of a trial court's decision on summary judgment is well

settled:

> Summary judgment is authorized if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with
> the affidavits, if any, show that there is no genuine issue as to
> any material fact, and that the moving party is entitled to
> judgment as a matter of law. We will affirm only when there
> are no genuine issues of material fact and the legal questions
> have been correctly decided. All reasonable inferences drawn
> from the facts must be viewed in favor of the non-moving party.
> The burden is on the moving party to clearly show an absence of

---

6. Randy also made POD beneficiary changes on two accounts Duebendorfer
   had at the Wells Fargo Bank in Beresford. Originally, each account had
   approximately $64,500 with no POD beneficiary. After the changes made by
   Randy these two accounts had POD beneficiaries, Randy and Kathy Moller,
   and resulted in a payment of approximately $129,000 to Mollers. Overall,
   upon Duebendorfer's death, Mollers were paid a total of approximately
   $395,000 as a result of all the POD beneficiary changes Randy made using
   the power of attorney.

any genuine issue of material fact and an entitlement to judgment as a matter of law. Summary judgment will be affirmed if there exists *any* basis which would support the trial court's ruling.

Schwaiger v. Avera Queen of Peace, 2006 SD 44, ¶7, 714 NW2d 874, 877 (citations omitted) (emphasis in original).

## Analysis and Decision

[¶10.]   **Whether the circuit court erred in finding a breach of fiduciary duty as a matter of law and granting summary judgment.**

[¶11.]   Under our settled law:

> A fiduciary relationship is founded on a "peculiar confidence" and trust placed by one individual in the integrity and faithfulness of another. When such relationship exists, the fiduciary has "duty to act primarily for the benefit" of the other. "Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary." South Dakota law reflects "the traditional view that fiduciary duties are not inherent in normal arm's-length business relationships, and arise only when one undertakes to act primarily for another's benefit. The law will imply such duties only where one party to a relationship is unable to fully protect its interests and the unprotected party has placed its trust and confidence in the other." We recognize no "invariable rule" for ascertaining a fiduciary relationship, "but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions giving to one advantage over the other."

Ward v. Lange, 1996 SD 113, ¶12, 553 NW2d 246, 250 (citing High Plains Genetics Research, Inc. v. JK Mill-Iron Ranch, 535 NW2d 839, 842 (SD 1995)) (additional citations omitted).

[¶12.]   "The existence of a fiduciary duty and the scope of that duty are questions of law for the court." *Id.* "Most often, deciding whether a fiduciary

relationship was breached is properly left to the trier of fact." *Id.* ¶14 (citing

American State Bank v. Adkins, 458 NW2d 807, 811 (SD 1990)). However, in this

case the trial court held "[a]s a matter of law, under the facts of this case viewed

most favorably to the non-moving party, Mollers breached their fiduciary duty owed

to the plaintiffs and committed fraud under SDCL 55-2-3 and 55-2-7 when they

changed the POD designation to benefit themselves in the sum of $20,000."[7]

---

7. Because the trial court found, as a matter of law, Mollers breached their fiduciary duty, summary judgment was granted on the fraud count pursuant to SDCL 55-2-3 and 55-2-7.

SDCL 55-2-3 provides:

Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or anyone for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except as follows:

(1) When the beneficiary does have the capacity to contract and, with a full knowledge of the motives of the trustee and of all other facts concerning the transaction which might affect his own decision and without the use of any influence on the part of the trustee, permits the trustee to do so;

(2) When the beneficiary does not have the capacity to contract but the circuit court, upon the like information of the facts, grants the like permission;

(3) When some of the beneficiaries have the capacity to contract and some do not have it and the former grant permission for themselves and the circuit court for the latter in the manner above prescribed; or

(4) When the instrument creating the trust expressly grants permission to the trustee to buy, sell or lease property for the trust from or to the trust.

SDCL 55-2-7 provides:

(continued . . .)

Mollers argue that the circuit erred in finding a breach of fiduciary duty as a matter of law.

[¶13.] This Court has held that "a power of attorney must be strictly construed and strictly pursued." *In re* Guardianship of Blare, 1999 SD 3, ¶14, 589 NW2d 211, 214 (citing 3 AmJur2d Agency § 31 (1986); Scott v. Goldman, 82 Wash App 1, 917 P2d 131, 133 (1996)) (stating powers of attorney are strictly construed). *"[O]nly those powers specified in the document are granted to the attorney-in-fact."* *Id.* (emphasis added); *see also In re* Estate of Crabtree, 550 NW2d 168, 170 (Iowa 1996) (citations omitted) (stating "a power of attorney must be strictly construed and the instrument will be held to grant only those powers which are specified").

[¶14.] Additionally, we have held "a fiduciary must act with utmost good faith and avoid any act of self-dealing[.]" Estate of Stevenson, 2000 SD 24, ¶9, 605 NW2d 818, 821 (citing *American State Bank*, 458 NW2d at 811). In order for self-dealing to be authorized, the instrument creating the fiduciary duty must provide "clear and unmistakable language" authorizing self-dealing acts. *See id.* ¶15. Thus, if the power to self-deal is not specifically articulated in the power of attorney, that power does not exist.

[¶15.] The power of attorney granted to Mollers by Duebendorfer was broad, but general in nature. While it did provide Mollers with gifting authority, that authority was limited to the annual IRS limit. The power of attorney did *not*

---

(. . . continued)

Every violation of the provisions of §§ 55-2-1 to 55-2-6, inclusive, is a fraud against the beneficiary of the trust.

specifically authorize Mollers to engage in acts of self-dealing and it cannot now be construed to allow such acts. *See Blare,* 1999 SD 3, ¶14, 589 NW2d at 214. Therefore, based on the language of the power of attorney, it is apparent, as a matter of law, Mollers breached their fiduciary duty to Duebendorfer when they engaged in the acts of self-dealing articulated above. These acts directly benefited Mollers in the amount of approximately $266,000 upon Duebendorfer's death, $20,000 of which would have gone to Bienash.

[¶16.] Mollers, however, argue that there would have been issues of material fact if the circuit court had not improperly excluded the document they claim Duebendorfer signed authorizing the POD changes. Mollers argue that the question before this Court is whether Mollers may introduce extrinsic evidence outside the terms of a strictly construed power of attorney to raise a factual issue; *i.e.* did they have authority to self-deal based on the document allegedly signed by Duebendorfer?

[¶17.] While this Court has held that "only those powers specified in the power of attorney are granted to the attorney-in-fact," *id.,* the issue presented by Mollers is one of first impression for this Court. Therefore, we look to other jurisdictions.

[¶18.] In *Crosby v. Luehrs*, 669 NW2d 635 (Neb 2003), the Nebraska Supreme court dealt with a scenario where Luehrs, as attorney-in-fact, used a general power of attorney to change POD beneficiary designations. These changes ultimately benefited Luehrs, as his amount of inheritance was increased due to these changes.

[¶19.] In examining whether Luehrs had the authority to make the POD changes, the Nebraska court held "[n]o gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument and there is shown a clear intent on the part of the principal to make such a gift." *Id*. at 644. The court further held that "[a] fiduciary will not be allowed to feather his or her own nest unless the power of attorney specifically allows such conduct." *Id*. "In short, where a fiduciary argues that a power of attorney allowed for self-dealing, that power must be specifically authorized in the instrument." *Id*. (citing Praefke v. American Enterprise Life Ins., 655 NW2d 456, 459 (WisCtApp 2002)). Based on these principles, the court concluded that Luehrs had engaged in impermissible self-dealing.

[¶20.] In *Kunewa v. Joshua*, 924 P2d 559 (HawCtApp 1996), the Hawaii Intermediate Court of Appeals was faced with a situation where Joshua used his general power of attorney, that did not expressly authorize him to make a gift to himself, to convey virtually all of his mother's property to himself. Joshua attempted to submit three affidavits that explained that his mother had intended that he use the power of attorney to make gifts to himself.

[¶21.] The Hawaii court held "[w]here a power of attorney does not expressly authorize the attorney-in-fact to make gifts to himself or herself, extrinsic evidence of the principal's intent to allow such gifts is not admissible." *Id*. at 565. The court explained the policy reasons underlying the rule prohibiting extrinsic evidence as follows:

> When one considers the manifold opportunities and temptations
> for self-dealing that are opened up for persons holding general

> powers of attorney—of which outright transfers for less than value to the attorney-in-fact [himself or] herself are the most obvious—the justification for such a flat rule is apparent. And its justification is made even more apparent when one considers the ease with which such a rule can be accommodated by principals and their draftsmen.

*Id.* (citing Estate of Casey v. Comm'r of Internal Revenue, 948 F2d 895, 898 (4thCir 1991)). The court went on to uphold the circuit court's determination, that as a matter of law, Joshua did not have the authority to make a gift of his mother's property to himself under the power of attorney.

[¶22.] In *Praefke*, 655 NW2d 456, the Wisconsin Court of Appeals was faced with a scenario where an attorney-in-fact used a durable power of attorney to designate herself as sole beneficiary of annuity contracts. The court held that "[a] fiduciary will not be allowed to feather his or her own nest unless the power of attorney specifically allows such conduct. In short, where the fiduciary argues that the power of attorney allowed for self-dealing, that power must be specifically authorized in the instrument." *Id.* at 459. Because the power of attorney in question in *Praefke* did not include the power to self-deal, the Wisconsin court was asked whether extrinsic evidence of the principal's oral authorization to allow such self-dealing in the form of a self-serving affidavit was admissible.

[¶23.] The court, relying on *Kunewa's* "compelling reasons for the rule prohibiting extrinsic evidence," *id.* at 460 (citing *Kunewa*, 924 P2d at 565), held "an attorney-in-fact may not make gratuitous transfers of a principal's assets unless the power of attorney from which his or her authority is derived expressly and unambiguously grants the authority to do so. As a corollary to this bright-line rule,

extrinsic evidence of the principals' intent to allow such gifts is not admissible." *Id.* at 461.[8]

[¶24.] After examining these cases, we conclude that the appropriate rational for this Court is to adopt a bight-line rule that no *oral* extrinsic evidence will be admitted to raise a factual issue. We leave for another day the issue of whether extrinsic evidence in the form of a *writing* should be admitted to raise a factual issue because the subsequent writing in this case is inadequate, as a matter of law.

[¶25.] The "written document" Mollers claim for their authority is vague; the document does not authorize self-dealing and does not approve of the specific changes Randy made at the bank. Rather, the document, in its entirety, says:

> I, Kenneth Duebendorfer, wish to notify the State Bank of Alcester that I am fully aware of the changes to be made on the CD's that I have at the State Bank of Alcester by my Power of Attorney Randall R. Moller.
> We have discussed the changes and I authorize Randy Moller to make them on my behalf.

This document does not give Randy authority to make himself and Kathy POD beneficiaries on Duebendorfer's accounts. It does not even give him authority to make changes to the POD beneficiaries. Nothing in this writing indicates that Duebendorfer was permitting Mollers to engage in self-dealing. The way the document is written there is no way to know what "specific" changes Duebendorfer wanted made.

---

8. The court in this case also took note of *Fender v. Fender*, 329 SE2d 430, 431 (SC 1985) (rejecting purported oral authorization to make gifts in order to avoid fraud and abuse) and *Estate of Swanson v. United States*, 46 FedCl 388, 392 (2000) (applying California law to conclude that a power of attorney may

(continued . . .)

[¶26.] Mollers admit that they prepared this document on their home computer, they could have easily put in the specific POD changes Duebendorfer allegedly wanted made to his accounts. Additionally, Randy was the only person to witness Duebendorfer allegedly sign the document, misspelling both his own first and last names. Therefore, Mollers argument that the "written document signed in the grantor's own hand" approving the changes dispels any concern of fraud and deception is not persuasive.

[¶27.] Based on the foregoing authority, we hold that an attorney-in-fact may not self-deal unless the power of attorney from which his or her authority is derived expressly provides in clear and unmistakable language authorization for self-dealing acts. Furthermore, no *oral* extrinsic evidence will be admitted to raise a factual issue. Finally, the offered *written* extrinsic evidence here, as a matter of law, is inadequate to raise a factual issue. Therefore, we find no error in the trial court's refusal to admit the writing and granting of summary judgment.

[¶28.] Affirmed.

[¶29.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

[¶30.] MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.

---

(. . . continued)

only be altered or expanded by another writing), *aff'd* 10 FedAppx 833, 836 (FedCir 2001); *Praefke,* 655 NW2d at 461.