#27530-aff'in pt & rev in pt-GAS
**2016 S.D. 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

REBECCA J. HEIN and
GOLDIE N. BURNHAM, Individually,
and GOLDIE N. BURNHAM, as
Personal Representative of the
ESTATE OF MARGARET L. ZOSS,
deceased,                                                     Plaintiffs and Appellees,


         v.


FRED M. ZOSS,                                              Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
SANBORN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON R. ERICKSON
Judge

\* \* \* \*

PAUL H. LINDE of
Schaffer Law Office, Prof, LLC
Sioux Falls, South Dakota

         and

MIKE C. FINK of
Fink Law Office
Bridgewater, South Dakota                          Attorneys for plaintiffs
                                                                   and appellees.


RONALD A. PARSONS, JR.
PAMELA R. REITER of
Johnson, Janklow, Abdallah,
   Reiter & Parsons, LLP
Sioux Falls, South Dakota                            Attorneys for defendant
                                                                   and appellant.

\* \* \* \*

ARGUED ON MAY 24, 2016
OPINION FILED **10/19/16**

#27530

SEVERSON, Justice

[¶1.]   A jury found Fred Zoss liable to Rebecca Hein and Goldie Burnham for breach of contract. It also found that Zoss breached his fiduciary duties to Margaret Zoss. On appeal, Zoss alleges that the circuit court erroneously excluded evidence. We reverse and remand for a new trial.

## Background

[¶2.]   In 2005, Margaret Zoss executed a power of attorney that appointed Fred Zoss, her son, as her attorney-in-fact. Beginning in 1993, Zoss lived with his mother, and he was her primary caretaker until her death in January 2013. Margaret held a life estate in several properties to which Rebecca Hein and Goldie Burnham, Margaret's daughters, held remainder interests. Prior to Margaret's death, Zoss had been leasing from Margaret the land in which Hein and Burnham held remainder interests. In January 2014, Hein and Burnham initiated this suit. They alleged that Zoss had breached his oral farmland lease by failing to pay rent (on the property in which they received their remainder interests) for the 2013 crop year.[1] Burnham, who was appointed personal representative of Margaret's estate, also brought suit on behalf of Margaret's estate (the Estate).[2] The Estate alleged

---

1.  Margaret died in January 2013, but pursuant to SDCL 43-32-22.1, Zoss continued to lease Hein and Burnham's land for the 2013 crop year. SDCL 43-32-22.1 provides in part: "In the case of farm tenants, occupying and cultivating agricultural land of forty acres or more, under an oral lease, the tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice for termination is given by either party to the other by September first . . . ."

2.  Throughout this opinion, Hein, Burnham, and the Estate are collectively referred to as *Plaintiffs*.

-1-

that Zoss breached the fiduciary duties that he owed to Margaret by "exercising improper influence and self-dealing; causing Margaret to make substantial gifts (including farmland) to Fred; influencing Margaret into making business opportunities available to Fred; using his power of attorney in fact to lease life estate property from Margaret (rent free); conveying other personal property and financial assets into joint ownership; [and] outright converting Margaret's assets to his own use."[3]

[¶3.]     The Estate moved for summary judgment on its breach of fiduciary duty claim.  The circuit court granted part of its motion and determined that "from and after October 25, 2005," when Margaret executed the power of attorney, a fiduciary duty existed between Margaret and Zoss.  However, the court determined that whether Fred actually breached those duties owed to Margaret was a question of fact for the jury.

[¶4.]     Prior to trial, Plaintiffs also sought an order in limine to exclude extrinsic evidence of Margaret's intent with regards to the power of attorney.  The court granted the motion and prohibited any party from "introduc[ing] extrinsic evidence regarding Margaret L. Zoss' intent to allow Fred Zoss to self-deal or make gifts of Margaret's property to himself."  The order also provided:

> Since Margaret Zoss' written power of attorney does not, in clear and unmistakable language, authorize her attorney-in-fact (Fred Zoss) to make gifts to himself, and likewise does not expressly authorize self-dealing by Fred, this [c]ourt prohibits the introduction of any/all extrinsic evidence suggesting that such gifting and self-dealing *were* authorized by Margaret Zoss.

---

3.     The Estate also brought claims of undue influence and conversion.  The jury was never instructed on those claims.

-2-

> Such excluded evidence would include any (claimed) statements made by Margaret Zoss (deceased) regarding her intent to allow Fred Zoss to self deal or effectuate gifts to himself. Such excluded evidence would also include any claims that Margaret wanted Fred to make gifts to himself or to self-deal.

[¶5.] A jury trial was held on May 20-21, 2015. At trial, the jury heard evidence that Zoss leased land in which Margaret held a life estate interest without paying rent. It also heard evidence that Zoss and Margaret shared a joint banking account from which Zoss transferred Margaret's funds to his own account. The jury returned a verdict in favor of Hein and Burnham on the breach of contract claim and awarded them $47,200. It also found in favor of the Estate on the breach of fiduciary duty claim. The jury awarded the Estate $188,415 in damages for breach of fiduciary duties and $87,500 in punitive damages.

[¶6.] Zoss moved the circuit court for a new trial, alleging that the court erroneously excluded evidence that would have demonstrated that Margaret never charged her children rent for farming her land and that she set up the joint banking account with Zoss so that he could handle her living expenses. The court denied his motion, and Zoss appeals to this Court.

**Standard of Review**

[¶7.] "The denial of a motion for a new trial is reviewed for an abuse of discretion." *Lenards v. DeBoer*, 2015 S.D. 49, ¶ 10, 865 N.W.2d 867, 870. "Evidentiary rulings made by the trial court are presumed correct and are reviewed under an abuse of discretion standard." *In re Estate of Duebendorfer*, 2006 S.D. 79, ¶ 16, 721 N.W.2d 438, 443 (quoting *Veeder v. Kennedy*, 1999 S.D. 23, ¶ 41, 589 N.W.2d 610, 619). "An evidentiary ruling will not be overturned unless error is

demonstrated and shown to be prejudicial error. Error is prejudicial when, in all probability it produced some effect upon the final result and affected rights of the party assigning it." *Behrens v. Wedmore*, 2005 S.D. 79, ¶ 63, 698 N.W.2d 555, 579 (internal quotation marks omitted) (quoting *Novak v. McEldowney*, 2002 S.D. 162, ¶ 7, 655 N.W.2d 909, 912).

## Analysis

[¶8.] It is undisputed that Zoss was a fiduciary to Margaret. "[I]n South Dakota, as a matter of law, a fiduciary relationship exists whenever a power of attorney is created." *Estate of Duebendorfer*, 2006 S.D. 79, ¶ 26, 721 N.W.2d at 445. "A fiduciary is defined as 'a person who is required to act for the benefit of another person on *all matters within the scope of their relationship*.'" *Dykstra v. Page Holding Co.*, 2009 S.D. 38, ¶ 27, 766 N.W.2d 491, 497 (quoting *Black's Law Dictionary* (8th ed. 2004)). "A fiduciary must act with utmost good faith and avoid any act of self-dealing that places [his] personal interest in conflict with [his] obligations to the beneficiaries." *In re Estate of Stevenson*, 2000 S.D. 24, ¶ 9, 605 N.W.2d 818, 821 (quoting *Am. State Bank v. Adkins*, 458 N.W.2d 807, 811 (S.D. 1990)). "Thus, if the power to self-deal is not specifically articulated in the power of attorney, that power does not exist." *Bienash v. Moller*, 2006 S.D. 78, ¶ 14, 721 N.W.2d 431, 435.

[¶9.] Zoss does not contend that the power of attorney contained "clear and unmistakable language" authorizing him to self-deal. *See id.* ¶ 27, 721 N.W.2d. at 437. Rather, he maintains that the court's order in limine too broadly prohibited him from introducing otherwise admissible evidence. In his first claim of

evidentiary error, Zoss argues that the lower court "misinterpreted *Bienash* and stretched its limited holding beyond recognition to forbid the introduction of *any* evidence of Margaret Zoss's intent and longstanding practice of allowing and encouraging Fred and her other sons to farm the Zoss family land without paying rent."

[¶10.]     We have adopted a "bright-line rule" that an attorney-in-fact cannot present oral extrinsic evidence that a power of attorney gave the attorney-in-fact the power to self-deal when the power of attorney does not explicitly provide such. *Bienash*, 2006 S.D. 78, ¶ 24, 721 N.W.2d at 437.  In *Bienash*, because the writing offered to show intent of self-dealing was inadequate, we left "for another day the issue of whether extrinsic evidence in the form of a *writing* should be admitted to raise a factual issue[.]"  *Id.*  The policy underlying the rule has been explained as follows:

> When one considers the manifold opportunities and temptations for self-dealing that are opened up for persons holding general powers of attorney—of which outright transfers for less than value to the attorney-in-fact [himself or] herself are the most obvious—the justification for such a flat rule is apparent.  And its justification is made even more apparent when one considers the ease with which such a rule can be accommodated by principals and their draftsmen.

*Bienash*, 2006 S.D. 78, ¶ 21, 721 N.W.2d at 436 (alteration in original) (quoting *Kunewa v. Joshua*, 924 P.2d 559, 565 (Haw. Ct. App. 1996)).

[¶11.]     Although Zoss claims that the court misinterpreted *Bienash*, we cannot say that the court abused its discretion by issuing the order in limine.  Zoss concedes that "Fred was not permitted under *Bienash* to introduce oral extrinsic evidence that Margaret intended Fred to use the power of attorney to make gifts to

himself where the instrument does not expressly grant that power." And Zoss has not argued that the court excluded a relevant subsequent writing. Accordingly, the order appropriately excluded evidence that Margaret intended for Zoss to self-deal.

[¶12.]		There is also no dispute that Zoss farmed Margaret's land and that by doing so he was engaging in a transaction with himself. SDCL 55-4-13 prohibits conduct such as Zoss's. It provides:

> No trustee, unless expressly authorized by the trust instrument, shall directly or indirectly lease, buy or sell any property for the trust from or to itself . . . . Notwithstanding this provision or any statute to the contrary, a trustee may lease . . . property from or to the trust he represents as trustee if specifically authorized to do so in . . . the instrument creating the trustee relationship . . . .

*See also* SDCL 59-3-11 ("An authority expressed in general terms, however broad, does not authorize an agent to do any act which a trustee is forbidden to do by the law on trusts."). SDCL 55-2-2 additionally prohibits a fiduciary from "us[ing] or deal[ing] with the trust property for his own profit or for any other purpose unconnected with the trust." The Restatement (Third) of Trusts § 78 (Am. Law Inst. 2007) also addresses the duty of loyalty as follows:

> (1)	Except as otherwise provided in the terms of the trust, a trustee has a duty to administer the trust solely in the interest of the beneficiaries, or solely in furtherance of its charitable purpose.
>
> (2)	Except in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests.
>
> (3)	Whether acting in a fiduciary or personal capacity, a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter.

However, the Restatement further explains of "[p]re and post-trusteeship transactions":

> The rules of this Section do not render voidable those transactions or agreements that were entered into or claims that were acquired by a person before being appointed trustee or contemplating appointment . . . . After becoming trustee, however, with a responsibility for protecting the trust estate . . . the handling of even a preexisting claim of this type will involve conflicting interests, requiring at least disclosure to beneficiaries and that the trustee act in good faith and in the interest of the beneficiaries.

Restatement (Third) of Trusts § 78 cmt. h. Therefore, in this case there was a disputed factual question whether Zoss acted with utmost good faith and in Margaret's interest when he continued to rent Margaret's land in the same manner as he had before he became her attorney-in-fact. Accordingly, the issue before this Court is whether, during trial, the court excluded otherwise admissible evidence that prejudiced Zoss because he was prevented from asserting that, even though he leased land to himself, he did not breach his fiduciary duty of loyalty to Margaret.

[¶13.] At the hearing on the motion in limine, counsel for Zoss explained that he wished to introduce evidence that, for many years prior to Margaret's death and prior to her execution of the power of attorney, Zoss and his brothers farmed Margaret's land without paying rent. Nonpayment of rent was not a practice unique to Zoss. He also planned to introduce evidence of Margaret's relationship with Zoss and her other sons. At trial, Zoss attempted to explain that rather than paying rent in the form of money, he paid his mother "in the terms of hard work of [him] taking care of her[.]" This evidence was relevant to show whether Zoss acted

with utmost good faith and for the benefit of Margaret, and its omission prejudiced Zoss. Therefore the court abused its discretion by excluding it.

[¶14.] Additionally, the court erroneously excluded evidence of the circumstances surrounding the creation of Margaret and Zoss's joint account. SDCL 29A-6-103(1) provides: "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." Zoss asserts that he should have been allowed to introduce evidence to explain why he and Margaret established the joint account. Zoss was not prevented from introducing evidence to demonstrate that he used the money to pay Margaret's expenses rather than for his own gain. Indeed, he testified that he transferred money from the joint account into his own account in order to pay her living expenses, and he introduced lists of his claimed expenses for Margaret from 2008 to 2012. However, by completely barring any evidence related to the establishment of the account, Zoss was prevented from introducing evidence that there was "a different intent" from that of the statutory designation. Accordingly, the court abused its discretion by excluding evidence from Zoss regarding the circumstances surrounding the opening of the account in 2004.

[¶15.] At oral argument, counsel for Zoss claimed that the court's error tainted the entire case, which included the claims against Hein and Burnham. He asks this Court to remand the case for a new trial against his sisters as well as the Estate. However, we affirm the jury's verdict against Zoss on the claims by Hein and Burnham. He has not explained to this Court how the omission of evidence—

that he did not pay rent either pre- or post-execution of the power of attorney or the circumstances surrounding the creation of the joint account—prejudiced him on those claims in light of the fact that it was undisputed that he paid rent to Margaret at the end of 2012 and then transferred the rent money from the joint account into his own account but was unable to account for expenditure of that sum at trial. Therefore, we affirm the jury's verdict on the claims by Hein and Burnham.

[¶16.]    Zoss's last claim of error is that he should have been permitted to introduce Margaret's will.  Zoss made an offer of proof on the will, and the court noted, "well, Article eight does say if any of my children should owe debts to me at the time of my death, I hereby forgive all such debts and any interest accrued thereon."  The court excluded the will because it determined that the will constituted an affirmative defense that was not pled, as required.  *See* SDCL 15-6-8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense.").

[¶17.]    This Court cannot say that the circuit court abused its discretion by excluding Margaret's will.[4]  If it applies, it very clearly falls within the scope of SDCL 15-6-8(c) as constituting an avoidance or affirmative defense.[5]

---

4.    The pleadings were never amended in this case to assert an affirmative defense.  Even if, as the dissent determines, the will "provides context for Margaret's intentions towards Zoss[,]" it is within the circuit court's discretion to deny its introduction.  Here, the circuit court's decision does not constitute an abuse of discretion.

5.    We do not determine whether the will's forgiveness clause, which according to the trial court, states that it forgives debts owed at the time of death, would apply under the circumstances of this case.

**Conclusion**

[¶18.]    The circuit court did not abuse its discretion by issuing the order in limine.  However, it erred when it prevented Zoss from introducing otherwise relevant evidence related to the circumstances surrounding the establishment of the joint account and of Margaret's arrangement, both before and after she executed the power of attorney, of leasing her land to her family without charging rent.  The court did not abuse its discretion by excluding Margaret's will.  We reverse and remand for a new trial on the claims by the Estate of Margaret Zoss.

[¶19.]    GILBERTSON, Chief Justice, and ZINTER, and WILBUR, Justices, concur.

[¶20.]    KERN, Justice concurs in part and dissents in part.


KERN, Justice (concurring in part and dissenting in part).

[¶21.]    I agree with the majority opinion's analysis with the exception of the Court's holding that the exclusion of the will was proper under SDCL 15-6-8(c) as an affirmative defense not pled.  On this point I respectfully dissent.  It is not clear that Zoss sought to submit the will only for the purpose of proving an affirmative defense.  Furthermore, South Dakota law provides that, notwithstanding SDCL 15-6-8(c), a defendant may amend his pleadings to include an affirmative defense even during trial.  In my view, the circuit court abused its discretion in excluding Margaret's will, which provided extrinsic, non-oral evidence of her intent, and the will should be admissible upon remand.

[¶22.]    SDCL 15-6-8(c) requires that a party "set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." The statute provides a nonexclusive list of examples. *Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 865 (S.D. 1993). At trial, Zoss's attorney questioned Goldie as to whether rents unpaid by Zoss were debts owed to the estate in order to lay foundation for introduction of the will. Appellees' brief cites this exchange and statements made during the offer of proof to demonstrate that Zoss sought to introduce the will as part of an affirmative defense. Because it was not affirmatively pled per SDCL 15-6-8(c), Appellees successfully argued and now the majority opinion holds that the defense was barred.

[¶23.]    Zoss, however, argues that the will was not offered as a defense in and of itself. Rather, he asserts that the will provides non-oral, extrinsic evidence of Margaret's intent in conferring to him a power of attorney. Indeed, the clause in question *would not* serve as a shield for claims of breach of fiduciary duty. Article VIII, as interpreted by the circuit court, apparently forgave only debts owed to Margaret. Thus, while the provision may arguably help Zoss bolster his claim to avoid payment of rents through 2012, a literal reading of its words alone would not discharge him of his fiduciary duties as attorney-in-fact. This is because only "the instrument *creating the fiduciary duty*" can authorize self-dealing under our holding in *Bienash v. Moller*, 2006 S.D. 78, ¶ 14, 721 N.W.2d 431, 435 (emphasis added). The legal utility of the will, then, is not in its power to release Zoss from his fiduciary duties on its own terms, but in that it provides context for Margaret's intentions towards Zoss. Additionally, the breach of contract claim goes to the land

then-owned by the sisters in 2013, making the will inapplicable to rents outstanding after 2012. It cannot be, then, that the will was being offered only as an affirmative defense.

[¶24.] But even if the will had been offered as such, this Court "recognize[s] . . . [an] exception[] to the rule that affirmative defenses not pled are waived" under SDCL 15-6-15(a). *High Plains Genetics Research v. J K Mill-Iron Ranch*, 535 N.W.2d 839, 845 (S.D. 1995). SDCL 15-6-15(a) provides that a "party may amend his pleading . . . by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Moreover, the "trial court may permit the amendment of pleadings before, *during*, and after trial without the adverse party's consent." *Klutman v. Sioux Falls Storm*, 2009 S.D. 55, ¶ 14, 769 N.W.2d 440, 446 (emphasis added). "[T]he most important consideration in determining whether a party should be allowed to amend a pleading is whether the nonmoving party will be prejudiced by the amendment." *Burhenn v. Dennis Supply Co.*, 2004 S.D. 91, ¶ 20, 685 N.W.2d 778, 783. "Prejudice is often shown when a party is surprised and unprepared to meet the contents of the proposed amendment." *Tesch v. Tesch*, 399 N.W.2d 880, 882 (S.D. 1987) (citing 61A Am. Jur. 2d *Pleading* § 315). "A motion to amend is addressed to the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion which results in prejudice to the non-moving party." *Isakson v. Parris*, 526 N.W.2d 733, 736 (S.D. 1995) (denial of leave to amend to include a new affirmative defense held an abuse of discretion when no prejudice would have been suffered by plaintiff).

[¶25.] No prejudice to the Appellees would have resulted by amendment of the pleadings to include the will. Appellees, in objecting to the will's introduction at trial, argued that the will would "confuse the jury," and that they did not "believe that the second day of trial, most of the way through the defendant's case, [was] the time for this issue to be raised and have the [c]ourt put in this position." The circuit court agreed, denying Zoss's request to admit the will, stating that it was an affirmative defense not pled. At a hearing held after trial on Zoss's motion for a new trial, the circuit court stated that exclusion of the will was proper because "[i]t came at the last minute." Yet the record establishes that the foundation for the exhibit was laid at the beginning of Zoss's case in chief through his first witness Goldie Burnham. Zoss then proffered the will as an exhibit midway through his case.

[¶26.] Regardless, SDCL 15-6-15(a) provides that a party may amend the pleadings—*even during trial*—if "justice so requires." Timeliness is a consideration. But the overriding question is whether the nonmoving party would have been prejudiced by the amended complaint. *Id.* Under Federal Rules of Civil Procedure 15(a) and (b), upon which SDCL 15-6-6(a) is patterned, leave should be freely given absent other factors such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendment, or futility of the amendment. *Schecher v. Shakstad Elec. & Mach. Works, Inc.*, 414 N.W.2d 303, 304 (S.D. 1987); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). As we observed in *Isakson*:

> [The court will consider the] hardship to the moving party if
> leave to amend is denied, the reasons for the moving party

> failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted. . . .
>
> . . . Thus, courts have allowed amendments when it was established that doing so would not unduly increase discovery or delay the trial, and when the opponent could not claim surprise, but effectively should have recognized the new matter included in the amendment would be at issue.

526 N.W.2d at 737.

[¶27.] Appellees' complaint cites to the will, making Zoss's use thereof hardly surprising. Appellees' motion in limine further reflects that they were aware Zoss might raise the issue of Margaret's intent regarding rent due and the power of attorney. Meanwhile, exclusion of the will not only excluded important evidence proper for the jury to consider, but also severely hampered the efforts of the defense. Appellees' cognizance of both the will and Zoss's argument means introduction of the will should not have rendered them unprepared. When weighing the hardship imposed by the circuit court's refusal to grant leave with the prejudice faced by the Appellees, Zoss should have been allowed to amend his pleadings.

[¶28.] This leaves the question whether *Bienash* would apply to exclude the will in the first place. The motion in limine excluded *all* extrinsic evidence of Margaret's intent, without reference to whether it was oral or written. The circuit court, in granting the motion, relied on *Bienash*. In *Bienash*, this Court surveyed the decisions of other jurisdictions and held that "an attorney-in-fact may not self-deal unless the power of attorney from which his or her authority is derived expressly provides in clear and unmistakable language authorization for self-dealing acts." *Bienash*, 2006 S.D. 78, ¶ 27, 721 N.W.2d at 437. But we left "for

another day the issue of whether extrinsic evidence in the form of a *writing* should be admitted to raise a factual issue[.]" *Id.* ¶ 24.

[¶29.] *Kunewa*, a decision that influenced both this Court in *Bienash* and others cited therein, stated that "[w]hen one considers the manifold opportunities and temptations for self-dealing . . . the justification for such a flat rule is apparent." *Kunewa v. Joshua*, 924 P.2d 559, 565 (Haw. Ct. App. 1996). The court in *Kunewa* prohibited the use of affidavits summarizing oral statements made by the defendant's mother evincing the mother's intention to permit self-dealing, concluding that "[o]ral authorization is not acceptable." *Id.* Even where the power of attorney granted the defendant broad authority to do everything his mother "might or could do if personally present," the *Kunewa* court refused to look to extrinsic evidence, concluding that the language in the power of attorney was clear and unambiguous. *Id.* at 566. The court also noted that it would be "most unusual for an owner of property to grant a power of attorney authorizing the attorney in fact to give his property away. If a person has decided to make a gift of property, he or she usually decides as to who is going to be the donee." *Id.*

[¶30.] Other decisions, like *Praefke v. Am. Enter. Life Ins. Co.*, 655 N.W.2d 456 (Wis. Ct. App. 2002), follow a similar approach, establishing a "corollary to this bright-line rule" that, absent language which "expressly and unambiguously grants the authority" to make gifts to oneself, "extrinsic evidence of the principal's intent to allow such gifts is not admissible." *Id.* at 461. But these cases dealt only with *oral* authorizations. In *Bienash* we reserved ruling on the question whether a writing

should be admissible to resolve a factual dispute. We should now address this issue.

[¶31.]      Here we have a prior writing made by Margaret. The will, though executed before the power of attorney, provided context for the power of attorney. As an expression of her intentions, it eliminates the concern that the defendant might mislead the fact finder. It would be "most unusual," moreover, for the power of attorney to contradict Margaret's written intentions regarding the disposal of land and forgiveness of debts. *Kunewa*, 924 P.2d at 565. As the Supreme Court of Vermont observed: "Ideally, the intention of the parties will always be apparent from the express language of the power of attorney itself. Unfortunately, that is not always the case." *In re Estate of Kurrelmeyer*, 992 A.2d 316, 319 (Vt. 2010). Jurisdictions elsewhere have expressed similar concerns about a bright line prohibition against extrinsic evidence. The Supreme Court of Delaware, while acknowledging the adoption of the "bright line" rule articulated in *Kunewa* and adopted by several states,[6] nevertheless declined to adopt the rule, stating that "[i]f the grantor's intent is the primary concern in interpreting a durable power of attorney, a bright line rule might not always serve the interest of justice[.]" *Schock v. Nash*, 732 A.2d 217, 228-229 (Del. 1999). Other courts have likewise rejected a

---

6.      *See generally Aiello v. Clark*, 680 P.2d 1162 (Alaska 1984); *Hodges v. Surratt*, 366 So. 2d 768 (Fla. Dist. Ct. App. 1978); *In re Estate of Crabtree*, 550 N.W.2d 168 (Iowa 1996); *In re DeBelardino's Estate*, 352 N.Y.S.2d 858, 862-63 (N.Y. Sur. 1974), *decree aff'd*, 47 A.D.2d 589 (N.Y. 1975); *Whitford v. Gaskill*, 480 S.E.2d 690 (N.C. 1997), *opinion amended on reh'g*, 489 S.E.2d 177 (N.C. 1997); *Bryant v. Bryant*, 882 P.2d 169 (Wash. 1994).

bright line rule forbidding extrinsic evidence and instead permit consideration of the surrounding circumstances and intentions of the grantor.[7]

[¶32.] A middle ground approach would allow written extrinsic evidence but bar oral testimony including written summaries of the same. Such an approach satisfies both the fears raised in *Kunewa* and the problems inherent in an unduly narrow construction of documents as addressed in *Kurrelmeyer*. The circuit court read our holding in *Bienash* too narrowly, and on remand should allow Hein to amend his pleadings and receive the will into evidence.

---

7. *See, e.g.*, *LeCraw v. LeCraw*, 401 S.E.2d 697, 698 (Ga. 1991) (holding gifts made by attorney-in-fact authorized despite lacking specific authorization to make gifts of principal's property because, while "[a] formal power of attorney is subject to a strict construction . . . ascertainment of the intent of the parties plays an important role in the construction of a power of attorney, as it does in construing any contract.") (citations omitted); *King v. Bankerd*, 492 A.2d 608, 611 (Md. 1985) ("[T]he rule of strict construction 'cannot override the general and cardinal rule' that the court determine the intention of the parties. To ascertain this intent, [we] emphasize[] that the language used in the instrument and the object to be accomplished be viewed in light of the surrounding circumstances.") (citations omitted); *Seigworth v. State*, 539 P.2d 464, 465 (Nev. 1975) ("The extent of a power of attorney must be determined by the language employed in the document aided by the situation of the parties and surrounding circumstances."). *See also* Ralph C. Brashier, *The Ghostwritten Will*, 93 B.U. L. Rev. 1803, 1831 n.178 (2013).